**(Part B Cont'd.)**

If there are other applicable air bag and seat belt benefits, the maximum limit of our liability for the death of any one covered person under all such policies shall not exceed $15,000 for the Death Benefit and $10,000 for the Additional Death Benefit.

## SPECIAL PROVISIONS

A. To establish Wage Earner Disability Benefits, any covered person making a claim for income actually lost must submit all income-related documents we may reasonably require.

Income will be computed using the monthly rate being earned on the date of the accident and will be paid monthly as loss accrues. If not a salary or fixed amount, the monthly rate will be the average monthly income actually earned during the 12 months preceding the accident, or during the period the covered person actually was employed if less than 12 months.

B. If your covered auto and every other motor vehicle you own are within the policy territory referred to in Part E, General Provisions, then coverage under Part B will apply to you and any family member anywhere in the world.

## CONDITIONS

The Air Bag and Seat Belt Benefits coverage provided is subject to all provisions and conditions of the policy's Medical Payments Coverage and to the policy's general conditions, except as specifically modified herein.

## ARBITRATION

If we and a covered person do not agree:

1. On the reasonable fee;

2. That expenses are reasonable;

3. Whether services or supplies are medically necessary and appropriate medical services; or

4. Whether there is coverage under the terms of the Insuring Agreement for Part B;

then, that disagreement may be arbitrated, provided both parties so agree. This arbitration shall be limited to the aforementioned issues and shall not address any other coverage questions. Any arbitration finding that goes beyond the aforementioned issues shall be voidable by us or the covered person involved in the disagreement.

If both parties agree to arbitrate, each party will select an arbitrator, and those two arbitrators will select a third. If the two arbitrators cannot agree on a third within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the covered person lived at the time of the accident, and local rules of law as to procedure and evidence will apply. A decision agreed to by two or more of the arbitrators will be binding up to an amount that, when added to amounts previously paid by us, does not exceed the limit of liability for this coverage.

## PART C – UNINSURED MOTORISTS BODILY INJURY COVERAGE and UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE

## DEFINITIONS

A. Actual Cash Value, as used in this Part, means the amount it would cost to replace the damaged property with new property of like kind and quality, less allowance for depreciation and physical deterioration.

B. Covered person as used in this Part means:

1. You or any family member.

2. Any other person occupying your covered auto.

3. Any person for damages that person is entitled to recover because of BI to which this coverage applies sustained by a person described in 1. or 2. above.

However, the definition of covered person does not include the Government of the United States of America.

(PART C Cont'd.)

C. **Property Damage,** (referred to as PD), as used in this Part, means loss or damage to your covered auto resulting from collision due to an automobile accident. However, PD does not include loss of use of your covered auto or damages to personal property contained in your covered auto.

D. **Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for liability specified by the California Financial Responsibility law.

   For purposes of UMPD Coverage, an uninsured motor vehicle does not include a motor vehicle which has at least the minimum property damage limits required by law.

3. That is a hit-and-run motor vehicle. This means a motor vehicle whose owner or operator cannot be identified and that hits:

   a. You or any family member;

   b. A vehicle you or any family member are occupying; or

   c. Your covered auto.

      For BI losses, you or someone on your behalf, must report the accident within 24 hours to the appropriate law enforcement officials; and you must file a statement under oath that you have a cause of action arising out of the accident for damages against a person whose identity is unascertainable; and you must set forth facts in support thereof within 30 days.

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or refuses to admit coverage except conditionally or with reservation, or is or becomes insolvent.

5. Which is used without the permission of the owner if there is no bodily injury liability insurance or bond applicable at the time of the accident with respect to the owner or operator.

E. **Underinsured motor vehicle** means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

   However, an underinsured motor vehicle does not include an uninsured motor vehicle.

F. **Uninsured motor vehicle and underinsured motor vehicle** do not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any family member.

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads, except for a snowmobile.

5. Designed or modified for use off public roads while not on public roads.

6. While located for use as a residence or premises.

**INSURING AGREEMENT**

A. **UNINSURED MOTORISTS BODILY INJURY COVERAGE** (referred to as UMBI).

   We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of BI sustained by a covered person and caused by an auto accident.

   The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle or the underinsured motor vehicle. Any judgment for damages arising out of a suit brought without our written consent is not binding on us. This does not apply to a settlement made with the owner, operator, or insurer of an underinsured motor vehicle.

   With respect to damages for BI caused by an underinsured motor vehicle, or a vehicle as defined in Definition D.2, we will pay UMBI only after the limits of liability under any applicable motor vehicle bodily injury liability

**(PART C Cont'd)**

bonds or policies have been exhausted by payment of judgments or settlements, and proof of such is submitted to us.

B. **UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE**

1. We will pay compensatory damages for one of the following which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of PD to your covered auto that is:

   a. not insured for Collision Coverage if the Declarations indicates Uninsured Motorists Property Damage Coverage, (referred to as UMPD), applies to that auto; or

   b. insured for Collision Coverage if the Declarations indicates Uninsured Motorists Property Damage Waiver of Collision Deductible Coverage (referred to as UMPD WOCD), applies to that auto. UMPD WOCD coverage waives the Collision deductible shown in Part D of the Declarations for your covered auto.

2. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

3. The accident must involve actual, direct physical contact between your covered auto and an uninsured motor vehicle. The owner or operator of the uninsured motor vehicle must be identified or, the uninsured motor vehicle must be identified by its license number. You, or someone on your behalf, must report the accident to us within 10 business days.

4. Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**LIMIT OF LIABILITY**

A. 1. For UMBI Coverage, for BI sustained by any one person in any one accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown in the Declarations under any one vehicle for UMBI Coverage, for "each person". Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for UMBI Coverage is our maximum limit of liability for all damages for BI resulting from any one accident.

A. 2. The limits of liability (each person and each accident) under UMBI Coverage shall be reduced by all sums:

   1. Paid because of the BI by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

   2. Paid and the present value of all sums payable because of BI under worker's compensation law exclusive of nonoccupational disability benefits.

B. For UMPD Coverage, our maximum limit of liability is the lesser of:

   1. $3,500;

   2. The actual cash value of your covered auto; or

   3. The amount necessary to repair or replace your covered auto.

   No payment for UMPD Coverage will be made for losses paid to the covered person under Part D of the policy.

C. For UMPD WOCD Coverage, our maximum limit of liability is the lesser of:

   1. The amount of the loss; or

   2. The amount of the deductible shown for Collision Coverage in the Declarations for your covered auto.

   multiplied by the percentage of your loss that you are legally entitled to recover from the owner or operator of the uninsured motor vehicle.

{PART C Cont'd.}

D. The limits for UMBI, UMPD or UMPD WOCD Coverages are the most we will pay regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown in the Declarations;

4. Premiums paid; or

5. Vehicles involved in the accident.

In no event shall the limit of liability for two or more vehicles or trailers of any type used with any such vehicle, or two or more policies be added together, combined, or stacked to determine the limit of liability.

## EXCLUSIONS

A. We do not provide UMBI Coverage, UMPD Coverage or, UMPD WOCD Coverage for BI or PD sustained by any covered person if that person or the legal representative settles the claim without our consent. This exclusion (A) does not apply to a settlement made with the insurer of any underinsured motor vehicle.

B. We do not provide UMBI Coverage for BI sustained by any covered person while occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this Coverage under this policy or when the owner of that vehicle has UMBI Coverage similar to that provided in this Part. This includes a trailer of any type used with that vehicle.

C. We do not provide UMBI, UMPD, or UMPD WOCD Coverage while you or any family member is the operator of any self-propelled vehicle with less than four wheels that is not insured for this coverage under this policy. With respect to UMBI as used in this exclusion, "operating" means only the actual physical operation by the driver of the vehicle. This does not include a passenger of that vehicle.

D. We do not provide UMBI, UMPD, or UMPD WOCD Coverage for BI or PD sustained by any covered person:

1. While occupying your covered auto when it is being used to carry persons for a fee. This exclusion (D.1) does not apply to a share-the-expense car pool.

2. Using a vehicle without expressed or implied permission.

3. While your covered auto is rented or leased to others.

4. While occupying any vehicle when it is being operated in, or in practice for, any speed contest.

E. UMBI Coverage shall not apply directly or indirectly to the benefit of any insurer or self-insurer under any workers' compensation law or similar disability benefits law excluding non-occupational disability benefits as allowable by law.

F. We do not provide UMBI Coverage, UMPD Coverage, or UMPD WOCD Coverage for punitive or exemplary damages.

## OTHER INSURANCE

If there is other applicable insurance for UMBI, UMPD, or UMPD WOCD Coverage available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own will be excess over any collectible insurance.

3. If the coverage under this policy is provided:

a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability of coverage provided on an excess basis.

## NON-DUPLICATION

No covered person will be entitled to receive duplicate payments under this coverage for the same elements of loss which were:

(PART C Cont'd.)

1. Paid because of the BI by or on behalf of persons or organizations who may be legally responsible.

2. Paid or payable under any workers' compensation law or similar disability benefits law.

3. Paid or payable under any other auto policy's No-Fault benefits or medical payments coverage.

4. Paid under another provision or coverage in this policy.

ARBITRATION

A. This section applies to UMBI Coverage and UMPD Coverage and UMPD WOCD Coverage. If we and a covered person disagree as to:

1. Whether a covered person is legally entitled to recover BI or PD damages from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle; or

2. The amount of BI damages that the covered person is legally entitled to collect from that owner;

then, that disagreement shall be arbitrated, provided both parties so agree. This arbitration shall be limited to the two aforementioned factual issues and shall not address any other issues, including but not limited to, coverage questions. Any arbitration finding that goes beyond the two aforementioned factual issues shall be voidable by us or a covered person. The amount of damage can not be arbitrated under UMPD Coverage or UMPD WOCD Coverage.

B. Arbitration must be initiated by a written demand for arbitration sent by certified mail, return receipt requested within one year from the date of the accident. Arbitration may be initiated by either party.

C. If both parties agree to arbitration, the matter or matters upon which either party do not agree shall be settled by a single neutral arbitrator. The decision made by the arbitrator may be entered in any court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

D. Unless both parties agree otherwise, arbitration will take place in the county in which the covered person lived at the time of the accident, and local rules of law as to procedure and evidence will apply. Any decision of the arbitrator will be binding as to:

1. Whether the covered person is legally entitled to recover damages; and

2. The amount of damages, up to the coverage limit of liability.

## PART D – PHYSICAL DAMAGE COVERAGE

DEFINITIONS

A. Actual cash value, as used in this Part, means the amount that it would cost, at the time of loss, to buy a vehicle of the same make, model, body type, model year, and equipment, with substantially similar mileage and physical condition.

B. Collision means the impact with an object and includes upset of a vehicle. Loss caused by the following is covered under Comprehensive Coverage and is not considered collision: fire; missiles or falling objects; hail, water or flood; malicious mischief or vandalism; theft or larceny; riot or civil commotion; explosion or earthquake; contact with bird or animal; windstorm; or breakage of window glass. If breakage of window glass is caused by a collision you may elect to have it considered a loss caused by collision.

C. Loss means direct and accidental damage to the operational safety, function, or appearance of your covered auto, including its equipment. Loss does not include any diminution in value that remains after the damaged or stolen property or parts thereof have been repaired or replaced.

D. Nonowned vehicle means any private passenger auto, trailer, pickup, van, or miscellaneous vehicle not owned by, or furnished or available for the regular use of, you or any family member. This applies only when such vehicle is in the custody of or being operated by you or a family member. A nonowned vehicle does not include a temporary substitute vehicle or any of the following vehicles used in any business or occupation other than farming or ranching – pickup, van or miscellaneous vehicle.

5100CA(01) 8-98

(PART D Cont'd.)

E.  Your covered auto, as used in this Part, includes:

1.  A nonowned vehicle. If there is a loss to a nonowned vehicle, we will provide the broadest coverage shown in the Declarations.

2.  Equipment and accessories of your covered auto.

3.  Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures that is operated by power from the electrical system of your covered auto, including:

   a.  Accessories or antennas; or

   b.  Tapes, wires, records discs or other media for use with any such device or instrument;

   while in or upon your covered auto.

## INSURING AGREEMENT

A.  Comprehensive Coverage (excluding collision). We will pay for loss caused by other than collision to your covered auto, minus any applicable deductible shown in the Declarations. The deductible will be waived for loss to glass that can be repaired rather than replaced. In cases where the repair proves unsuccessful and the glass must be replaced, the full amount of the deductible, if any, must be paid.

   In addition, we will pay up to $15 a day, to a maximum of $450, for transportation expenses incurred by you. This applies only in the event of a total theft of your covered auto. We will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when your covered auto is returned to use or, if not recovered or not repairable, three days after we have made a settlement offer.

   If Increased Rental Reimbursement Coverage is afforded, limits for transportation expenses are increased up to $30 per day to a maximum of $900.

B.  Collision Coverage. We will pay for loss caused by collision to your covered auto, minus any applicable deductible shown in the Declarations.

C.  Rental Reimbursement Coverage and Increased Rental Reimbursement Coverage (for loss other than total theft). We will reimburse you for expenses you incur to rent a substitute for your covered auto. These coverages apply only if your covered auto is withdrawn from use for more than 24 hours due to a loss, other than a total theft, to that auto. Our payment will be limited to that period of time reasonably required to repair or replace your covered auto. If we determine your covered auto is not repairable, the rental period will end three days after we have made a settlement offer.

   Under Rental Reimbursement Coverage, we will pay up to $15 a day, to a maximum of $450. Under Increased Rental Reimbursement Coverage, we will pay up to $30 a day, to a maximum of $900.

D.  Towing and Labor Costs Coverage. We will pay the reasonable costs you incur for one of the following each time your covered auto is disabled:

1.  Mechanical labor up to one hour at the place of breakdown.

2.  Towing, to the nearest place where necessary repairs can be made during regular business hours, if the vehicle will not run or is stranded on or immediately next to a public road.

3.  Delivery of gas, oil, a battery or a change of tire. However, we do not pay for the cost of these items.

## LIMIT OF LIABILITY

A.  For total losses, the limit of liability for Comprehensive and Collision Coverage, is the actual cash value of your covered auto.

B.  For partial losses, the limit of liability for Comprehensive and Collision Coverages is the amount necessary to repair or replace the damaged or stolen property or parts thereof without deduction for depreciation.

(PART D Cont'd.)

## PAYMENT OF LOSS

We may pay for loss in money, or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to you or to the address shown in the Declarations. If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the damaged or stolen property and pay you an agreed or appraised value for it. We cannot be required to assume the ownership of damaged property. We may settle a claim either with you or with the owner of the property.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown in the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion, or embezzlement of your covered auto. We may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations. When we pay the loss payee we will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## WAIVER OF COLLISION DEDUCTIBLE

We will not apply the deductible to loss caused by collision with another vehicle if all of these conditions are met:

1. The loss to your covered auto is greater than the deductible amount; and

2. The owner and driver of the other vehicle are identified; and

3. The owner or driver of the other vehicle has a liability policy covering the loss; and

4. The driver of your covered auto is not legally responsible, in any way, for causing or contributing to the loss.

## EXCLUSIONS

We will not pay for:

1. Loss to your covered auto which occurs while it is used to carry persons for a fee. This does not apply to a share-the-expense car pool.

2. Damage due and confined to wear and tear, freezing, or road damage to tires. This does not apply if the damage results from the total theft of your covered auto. This exclusion (2) does not apply to Towing and Labor Costs Coverage.

3. Damage due and confined to mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of your covered auto or its equipment.

We will pay for ensuing damage only to the extent the damage occurs outside of the major component (such as transmission/transaxle, electrical system, engine including cooling and lubrication thereof, air conditioning, computer, suspension, braking, drive assembly, and steering) in which the initial mechanical or electrical breakdown or failure occurs.

This exclusion does not apply if the damage results from the total theft of your covered auto, and it does not apply to Towing and Labor Costs Coverage.

4. Loss due to or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

5. Loss to a camper body or trailer you own which is not shown in the Declarations. This does not apply to one you acquire during the policy period and ask us to insure within 30 days after you become the owner.

6. Loss to any nonowned vehicle or temporary substitute vehicle when used by any person without reasonable belief that that person is entitled to do so.

7. Loss to equipment designed or used to evade or avoid the enforcement of motor vehicle laws.

8. Loss to any nonowned vehicle arising out of its use by you or a family member while employed or otherwise engaged in auto business operations.

9. Loss to your covered auto while it is rented or leased to others.

10. Loss to any vehicle while it is being operated in, or in practice for, any speed contest.

11. Loss resulting from:

   a. The acquisition of a stolen vehicle;

   b. Any legal or governmental action to return a vehicle to its legal owner; or

   c. Any confiscation or seizure of a vehicle by governmental authorities.

(PART D Cont'd.)

This exclusion does not apply to innocent purchasers of stolen vehicles for value under circumstances that would not cause a reasonable person to be suspicious of the sales transaction or the validity of the title.

12. Loss resulting from use in any illicit or prohibited trade or transportation.

13. Any loss arising out of any act committed:

    a. By or at the direction of you or any family member; and

    b. With the intent to cause a loss.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a nonowned vehicle or temporary substitute vehicle will be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the nonowned vehicle or temporary substitute vehicle.

2. Any other applicable physical damage insurance.

3. Any other source of recovery applicable to the loss.

This provision does not apply to Towing and Labor Costs Coverage.

## APPRAISAL

If we and you do not agree on the amount of loss, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither we nor you waive any of our rights under this policy by agreeing to an appraisal.

# PART E – GENERAL PROVISIONS

## AIR BAG

If an air bag in your covered auto deploys for any reason, we will pay without deductible to replace it.

## BANKRUPTCY

Bankruptcy or insolvency of the covered person, as defined in this policy, shall not relieve us of any obligations under this policy.

## CHANGES

A. The premium is based on information we have received from you and other sources. You agree to cooperate with us in determining if this information is correct and complete. You agree that if this information changes, or is incorrect or incomplete, we may adjust your premiums accordingly during the policy period.

B. If, during the policy period, the risk exposure changes for any of the following reasons, the necessary premium adjustments will be made effective the date of change in exposure. You agree to give us notice of such exposure changes as soon as is reasonably possible:

1. Change in location where any vehicle is garaged.

2. Change, addition, or deletion relating to the description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.

3. Replacement, deletion, or addition of any vehicle. You must request coverage for a newly acquired vehicle within 30 days from the date the vehicle is acquired if you wish to continue any coverage. See DEFINITIONS – your covered auto.

4. Change, addition, or deletion relating to the date of birth, marital status, or driving record of any operator.

5. Addition or deletion of an operator.

6. Change, addition, or deletion of any coverage or limits.

C. We will make any calculations or adjustments of your premium using the applicable rules, rates, and forms as of the effective date of the change.

5100CA(01) 8–98

{PART E Cont'd.}

D. If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement that change in your location. This paragraph does not apply to changes implemented with a revision that includes both broadenings and restrictions in coverage. Otherwise, this policy includes all of the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

## DUTIES AFTER AN ACCIDENT OR LOSS

A. We must be notified promptly of how, when, and where an accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement, or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with a suit, accident or loss.

3. Submit, as often as we reasonably require:

   a. To physical exams by physicians we select. We will pay for these exams.

   b. To examination under oath. The examination must be signed.

4. Authorize us to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by us.

6. Promptly notify the police if a hit-and-run driver is involved.

C. In addition to the Duties outlined in A. and B. in this Part, a person seeking coverage under Part C – Uninsured Motorists Property Damage Coverage or Part D – Physical Damage Coverage must also:

1. Take reasonable steps after loss to protect your covered auto and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if your covered auto is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until we agree in writing that the covered person, as defined in Part A, has an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.

B. No legal action may be brought against us under UMBI Coverage until there has been full compliance with all the terms of this policy and unless within one year from the date of the accident:

1. Suit for BI has been filed against the uninsured motorist in a court of competent jurisdiction and notice of such suit has been given to us;

2. Agreement as to the amount due under this coverage has been concluded; or

3. The covered person or his legal representative has formally instituted arbitration proceedings.

C. No person or organization has any right under this policy to bring us into any action to determine the liability of a covered person, as defined in this policy.

## NON-DUPLICATION OF PAYMENT

When a claim, or part of a claim, is payable under more than one provision of this policy, we will pay the claim only once under this policy.

(PART E Cont'd.)

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we will be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights, and shall do nothing after loss to prejudice them. However, our rights in this paragraph do not apply to payments under:

1. Part B – Medical Payments Coverage, Extended Benefits, Death Benefit;

2. Part C – Uninsured Motorists Coverage related to an underinsured motor vehicle;

3. Part D – Physical Damage Coverage against any person using your covered auto with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment was made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and reimburse us to the extent of our payment. However, this paragraph does not apply to Part B, Extended Benefits Death Benefit.

Our rights under paragraphs A. and B. above arise only after the covered person has been fully compensated for those damages.

C. If the covered person, as defined in this policy, recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. Our share is that percent of the legal expenses that the amount we recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement.

D. If we make payment for a claim under Part A, and the covered person, as defined in Part A:

1. Failed or refused to comply with the duties specified in this provision; and

2. Prejudiced our defense of the liability claim by such failure or refusal;

then, the covered person shall reimburse us to the extent of our payment and cost of defense.

## OWNERSHIP

For purposes of this policy, a private passenger type auto, pickup or van is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur during the policy period as shown in the Declarations and within the policy territory. The policy territory is the United States of America (USA), its territories and possessions, Puerto Rico, and Canada, including transportation of your covered auto between any ports of these locations.

B. The policy territory also includes Mexico, subject to the following conditions:

1. All coverages afforded by the policy are extended to include coverage during trips into Mexico. This applies only to loss or accidents that occur within 75 miles of the USA border.

2. Any liability coverage afforded by the policy is extended to include the remainder of Mexico, but only if you have valid and collectible liability coverages from a licensed Mexican insurance company at the time of loss. Also, for this Part to be effective, the original liability suit for BI or PD must be brought in the USA.

This coverage does not extend:

a. To any covered person, as defined in this policy, who does not live in the USA.

b. To any covered person, as defined in this policy, occupying an auto which is not principally garaged and used in the USA.

c. To any auto which is not principally garaged and used in the USA.

The words "state or province" as used in the Out of State Coverage provision in Part A of the policy do not include a "state or province" of Mexico.

Losses payable under Part D of the policy will be paid in the USA. If the auto must be repaired in Mexico, our limit of liability will be determined at the nearest point in the USA where repairs can be made.

Any insurance we provide will be excess over any other similar valid and collectible insurance.

5100CA(01) 8–98

**(PART E Cont'd.)**

**NOTE:** Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.

**TERMINATION**

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured may cancel this policy at any time, but the effective date of cancellation cannot be earlier than the date of the request.

2. We may cancel by mailing a notice to the named insured shown in the Declarations at the address shown in this policy by giving:

   a. At least ten days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal policy; or

   b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal policy, we will cancel only:

   a. For nonpayment of premium; or

   b. For fraud or material misrepresentation affecting the policy or the presentation of a claim; or

      With respect to a policy obtained through misrepresentation of any of the following information:

      (1) Safety Record;

      (2) Annual miles driven in prior years;

      (3) Number of years driving experience;

      (4) Record of prior automobile insurance claims;

      (5) Any other factor found by the Commissioner to have a substantial relationship to the risk of loss.

The cancellation will become void if the correct information is furnished to us within 20 days of the receipt of notice of cancellation.

   c. For a violation of the terms or conditions of the policy; or

   d. A substantial increase in hazard insured against; or

   e. If your driver's license or that of any driver who customarily uses your covered auto has been suspended or revoked. This must have occurred:

      (1) During the policy period; or

      (2) Since the last anniversary of the original effective date if the policy period is other than one year.

      However with respect to a suspended driver's license, such cancellation will not become effective if the suspension is removed prior to the time that the cancellation of the policy is to become effective.

4. We may cancel for any other reason permitted by law.

B. **Nonrenewal.** If we decide not to renew this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period.

C. **Rescission.** With respect to all insureds, the entire policy will be void if whether before or after a loss, any covered person has:

   (1) Intentionally concealed or misrepresented any material fact or circumstance; or

   (2) Engaged in fraudulent conduct; or

   (3) Made false statements;

   relating to this insurance.

D. **Automatic Termination.** If we offer to renew and you do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due will mean that you have not accepted our offer.

**(PART E Cont'd.)**

If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. This does not apply to liability coverage purchased for travel in Mexico.

E.   Other Termination Provisions.

1.   Proof of mailing of any notice will be sufficient proof of notice.

2.   If this policy is cancelled, the named insured shown in the Declarations may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3.   The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, we will provide coverage until the end of the policy period for:

1.   The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2.   The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your covered auto.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy we issued to you apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

Copyright, USAA, 1998. All rights reserved.
Includes copyrighted material of Insurance Services Office, used with permission.

## NOTICE - LIMITS OF FUTURE COVERAGE

California law requires that you be informed of the reasons your automobile policy may be cancelled or non-renewed, or the premiums increased.

Cancellation or nonrenewal of a policy may occur based on one or more of the following reasons:

- Nonpayment of premium.

- Driver's license of an insured has been suspended or revoked.

- Fraud or material misrepresentation affecting the policy or insured.

- A substantial increase in the hazard insured against.

Premium increase may occur if:

- There is accident involvement by an insured, and the insured is at fault in the accident.

- There is a change in, or addition of, an insured vehicle or driver.

- There is a change in location of garaging or use of an insured vehicle.

- A covered person is convicted of violating any provision of the Vehicle Code or Penal Code involving the operation of a motor vehicle.

- A payment is made as a result of a claim filed by an insured or a third party.

Premium increase or nonrenewal may occur for any reason not stated above that is both lawful and not unfairly discriminatory.

13580(02)  Rev. 9-98



PAGE   1
MAIL MCH-M-I
24769 56832
JUNE 25, 2003

# AUTOMOBILE POLICY PACKET

CIC    01331 15 16 7101 2

EFFECTIVE JUN 15 2003 TO NOV 12 2003

CAREY T CALDWELL
2928 FERNSIDE BLVD
ALAMEDA CA 94501-1672

**Read enclosures carefully and keep them with your policy records.**

| Contract, Declarations, Endorsements | | Information/Explanation Forms | |
|---|---|---|---|
| Form # | Title | Form # | Title |
| 5000 | – DECLARATIONS | | |
| SUPDECCW | – SUPPLEMENTAL INFORMATION | | |

FOR CALLS WITHIN THE U.S.:     Policy Service 1-800-531-8111
                               Claims 1-800-531-8222

RECEIVE THIS DOCUMENT AND OTHERS ELECTRONICALLY. SIGN UP AT usaa.com.

## IMPORTANT MESSAGES

THIS IS NOT A BILL.  Any premium charge or change for this policy will be reflected on your next regular monthly statement. Please do not disregard your current billing statement.

ID CARDS ENCLOSED - IF STOPPED BY THE POLICE, YOU MUST HAVE THIS CARD WITH YOU.  YOUR ID CARDS ARE ATTACHED AS THE LAST ITEM IN THE PACKET.

SEE SUPPLEMENTAL INFORMATION PAGE, IMMEDIATELY FOLLOWING THE DECLARATIONS PAGE, FOR ANY PREMIUM DISCOUNTS THAT ARE BEING APPLIED TO YOUR POLICY.

MCS01

Thank you for letting us serve you. We appreciate your business.

THIS PAGE INTENTIONALLY LEFT BLANK

PAGE 3

ADDL INFO ON NEXT PAGE   MAIL MCH-M-I
AMENDMENT TO



**USAA CASUALTY INSURANCE COMPANY**

(A Stock Insurance Company)

9800 Fredericksburg Road – San Antonio, Texas 78288

CALIFORNIA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State 04 | | | | Veh XX | POLICY NUMBER |
|---|---|---|---|---|---|
| CA B11 | | | | | 01331 15 16C 7101 2 |

POLICY PERIOD:    (12:01 A.M. standard time)
EFFECTIVE JUN 15 2003 TO NOV 12 2003

OPERATORS
01 CAREY T CALDWELL

**Named Insured and Address**

CAREY T CALDWELL
2928 FERNSIDE BLVD
ALAMEDA CA 94501-1672

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| 04 | 00 | VOLVO | S80 | SED 4D | 10000 | YV1TS94DXY1101B29 | 17 | W | 10 | 4 |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *=W/C=Work/School; B=Business; F=Farm; P=Pleasure
VEH 04   ALAMEDA CA 94501-1672

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES     LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 04 D=DED AMOUNT | 6-MONTH PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A – LIABILITY | | | | | | | | |
|   BODILY INJURY   EA PER $   300,000 | | | | | | | | |
|                   EA ACC $   500,000 | | 274.03 | | | | | | |
|   PROPERTY DAMAGE EA ACC $   100,000 | | 212.69 | | | | | | |
| PART B – MEDICAL PAYMENTS | | | | | | | | |
|                   EA PER $    50,000 | | 117.44 | | | | | | |
| PART C – UNINSURED MOTORISTS | | | | | | | | |
|   BODILY INJURY   EA PER $   300,000 | | | | | | | | |
|                   EA ACC $   500,000 | | 99.60 | | | | | | |
|   WAIVER OF COLL DEDUCTIBLE | | 21.66 | | | | | | |
| PART D – PHYSICAL DAMAGE COVERAGE | | | | | | | | |
|   COMPREHENSIVE LOSS      ACV LESS | D 100 | 198.78 | | | | | | |
|   COLLISION LOSS          ACV LESS | D 500 | 514.88 | | | | | | |
|   INCREASED RENTAL REIMBURSEMENT | | 26.48 | | | | | | |
| | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 1465.56 | | | | | | |

-------------------------------------ADJUSTMENT REASON-------------------------------

SUBSTITUTION OF VEH

TOTAL PREMIUM – SEE FOLLOWING PAGE(S)

LOSS PAYEE
VEH 04   OAKLAND MUNICIPAL CU, NORTH HOLLYWOOD  CA

ENDORSEMENTS: ADDED 06-15-03 –  NONE
REMAIN IN EFFECT (REFER TO PREVIOUS POLICY)– A137(01)   A400CA(01)   5100CA(01)

6B
I 04 B22521 P04N  N  N

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
on this date   JUNE 25, 2003

Bradford W. Rich
Secretary

Henry Viccellio Jr.
President

5000 C



**USAA CASUALTY INSURANCE COMPANY**

(A Stock Insurance Company)
9800 Fredericksburg Road – San Antonio, Texas 78288

CALIFORNIA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | | | | Veh | POLICY NUMBER |
|---|---|---|---|---|---|
| CA | | | | XX | 01331 15 16C 7101 2 |

POLICY PERIOD:          (12:01 A.M. standard time)
EFFECTIVE JUN 15 2003 TO NOV 12 2003

**Named Insured and Address**

CAREY T CALDWELL
2928 FERNSIDE BLVD
ALAMEDA CA 94501-1672

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. •W/C=Work/School; B=Business; F=Farm; P=Pleasure

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| REVISED 6 MONTH PREMIUM...$ 1465.56  6 MONTH INCREASE...$ | | | | | | | 128.03 | |
| PRORATED INCREASE...$ 104.22 | | | | | | | | |
| THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR: VEH 04 - EXTENDED BENEFITS COVERAGE, TOWING AND LABOR | | | | | | | | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
on this date    JUNE 25, 2003

Bradford W. Rich
Secretary

Henry Viccellio Jr.
President

5000 C

CIC    01331 15 16
PAGE    5
7101



## SUPPLEMENTAL INFORMATION

EFFECTIVE JUN 15 2003 TO NOV 12 2003

The following approximate premium discounts or credits have already been applied to reduce your policy premium costs.

NOTE: Age or senior citizen status, if allowed by your state/location, was taken into consideration when your rates were set and your premiums have already been adjusted.

```
VEHICLE 04
   ANTI-THEFT DISCOUNT                    -$  103.60
   CALIFORNIA AUTO POLICY DISCOUNT        -$   73.32
      *MULTIPLE POLICY DISCOUNT
   PASSIVE RESTRAINT DISCOUNT             -$   11.61
   VEHICLE INJURY RATING DISCOUNT         -$   13.04
```

## CALIFORNIA AUTOMOBILE INSURANCE IDENTIFICATION CARDS

You must show Evidence Financial Responsibility upon demand, to any law enforcement official or agency of California. To assist you with this requirement, we have attached two ID cards for each of your motor vehicles insured for liability coverage. One ID CARD should be kept with your motor vehicle at all times and presented as proof of coverage when an accident occurs and upon request of any law enforcement official. The other ID CARD should be kept in a safe place until needed for vehicle registration. For your convenience, you can request a duplicate Auto Insurance ID card on-line at usaa.com.

**53CA**1  Rev. 3-01                                             06/25/03

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| CALIFORNIA EVIDENCE OF FINANCIAL RESPONSIBILITY | CALIFORNIA EVIDENCE OF FINANCIAL RESPONSIBILITY |
|---|---|
| Name and Address of Insured | Name and Address of Insured |
| CAREY T CALDWELL<br>2928 FERNSIDE BLVD<br>ALAMEDA CA 94501-1672 | CAREY T CALDWELL<br>2928 FERNSIDE BLVD<br>ALAMEDA CA 94501-1672 |
| CAREY T CALDWELL | CAREY T CALDWELL |

| Insurance Company | | | | Insurance Company | | | |
|---|---|---|---|---|---|---|---|
| USAA CASUALTY INSURANCE COMPANY | | | | USAA CASUALTY INSURANCE COMPANY | | | |

| Policy Number | Effective Date | Expiration Date | Policy Number | Effective Date | Expiration Date |
|---|---|---|---|---|---|
| 01331 15 16C 7101 2 | 06/15/03 | 11/12/03 | 01331 15 16C 7101 2 | 06/15/03 | 11/12/03 |

| Vehicle  Make/VIN | | Year | Vehicle  Make/VIN | | Year |
|---|---|---|---|---|---|
| VOLVO | YV1TS94DXY1101829 | 2000 | VOLVO | YV1TS94DXY1101829 | 2000 |

| This policy provides at least the minimum amounts of liability insurance required by the CA VEH CODE SECTION 16056 for the specified vehicle and named insureds and may provide coverage for other persons and other vehicles as provided by the insurance policy. | This policy provides at least the minimum amounts of liability insurance required by the CA VEH CODE SECTION 16056 for the specified vehicle and named insureds and may provide coverage for other persons and other vehicles as provided by the insurance policy. |
|---|---|

# ID CARDS

**California Evidence of Financial Responsibility**
**Keep this card.**

**IMPORTANT:** The California Financial Responsibility Act (Section 16020) of the Vehicle Code requires every owner or operator of a vehicle subject to the requirements of the Financial Responsibility Act to carry evidence of financial responsibility in the vehicle at all times. Under vehicle code (Section 16028) every driver involved in an accident must provide evidence of financial responsibility at the scene. Failure to comply is an infraction and shall be punishable by fines, impoundment or license suspension.

| CALLING FROM: | POLICY SERVICE | AUTO/PROPERTY CLAIMS |
|---|---|---|
| – SACRAMENTO | (916) 921-6366 | (916) 921-9060 |
| – ALL OTHER CALIFORNIA LOCATIONS | 1-800-531-8111 | 1-800-531-8222 |

# ID CARDS

**California Evidence of Financial Responsibility**
**Keep this card.**

**IMPORTANT:** The California Financial Responsibility Act (Section 16020) of the Vehicle Code requires every owner or operator of a vehicle subject to the requirements of the Financial Responsibility Act to carry evidence of financial responsibility in the vehicle at all times. Under vehicle code (Section 16028) every driver involved in an accident must provide evidence of financial responsibility at the scene. Failure to comply is an infraction and shall be punishable by fines, impoundment or license suspension.

| CALLING FROM: | POLICY SERVICE | AUTO/PROPERTY CLAIMS |
|---|---|---|
| – SACRAMENTO | (916) 921-6366 | (916) 921-9060 |
| – ALL OTHER CALIFORNIA LOCATIONS | 1-800-531-8111 | 1-800-531-8222 |



PAGE    1
MAIL MCH-M-I
14325 60224
JULY 21, 2003

**AUTOMOBILE POLICY PACKET**

CIC    01331 15 16 7101 2

EFFECTIVE JUL 18 2003 TO NOV 12 2003

CAREY T CALDWELL
2928 FERNSIDE BLVD
ALAMEDA CA 94501-1672

Read enclosures carefully and keep them with your policy records.

| Contract, Declarations, Endorsements | | Information/Explanation Forms | |
| Form # | Title | Form # | Title |
| 5000 | – DECLARATIONS | | |
| SUPDECCW | – SUPPLEMENTAL INFORMATION | | |

FOR CALLS WITHIN THE U.S.:    Policy Service 1-800-531-8111
                              Claims 1-800-531-8222

RECEIVE THIS DOCUMENT AND OTHERS ELECTRONICALLY.  SIGN UP AT usaa.com.

---

**IMPORTANT MESSAGES**

THIS IS NOT A BILL.  Any premium charge or change for this policy will be reflected on your next regular monthly statement. Please do not disregard your current billing statement.

ID CARDS ENCLOSED – IF STOPPED BY THE POLICE, YOU MUST HAVE THIS CARD WITH YOU.  YOUR ID CARDS ARE ATTACHED AS THE LAST ITEM IN THE PACKET.

SEE SUPPLEMENTAL INFORMATION PAGE, IMMEDIATELY FOLLOWING THE DECLARATIONS PAGE, FOR ANY PREMIUM DISCOUNTS THAT ARE BEING APPLIED TO YOUR POLICY.

---

MCS01

Thank you for letting us serve you. We appreciate your business.

THIS PAGE INTENTIONALLY LEFT BLANK

PAGE 3

**USAA CASUALTY INSURANCE COMPANY**

(A Stock Insurance Company)

9800 Fredericksburg Road – San Antonio, Texas 78288

**CALIFORNIA AUTO POLICY**
**AMENDED DECLARATIONS**
**(ATTACH TO PREVIOUS POLICY)**

ADDL INFO ON NEXT PAGE    MAIL MCH-M-I
AMENDMENT TO

| State 05 | | Veh | POLICY NUMBER |
|---|---|---|---|
| CA 311 | | XX | 01331 15 16C 7101 2 |

POLICY PERIOD:        (12:01 A.M. standard time)
EFFECTIVE JUL 18 2003 TO NOV 12 2003

OPERATORS
01 CAREY T CALDWELL

**Named Insured and Address**

CAREY T CALDWELL
2928 FERNSIDE BLVD
ALAMEDA CA 94501-1672

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | VEH USE SYM | MILES ONE WAY | DAYS PER WEEK |
|---|---|---|---|---|---|---|---|---|---|
| 05 | 03 | MITSUBSH | GALAN ES/GTZ | SED 4D | 10000 | 4A3AA46H63E124753 | 16 W | 10 | 4 |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *W/E-Work/School; B-Business; F-Farm; P-Pleasure
VEH 05   ALAMEDA CA 94501-1672

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 05 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A – LIABILITY | | | | | | | | |
| BODILY INJURY    EA PER $   300,000 | | | | | | | | |
| EA ACC $   500,000 | | 274.03 | | | | | | |
| PROPERTY DAMAGE EA ACC $   100,000 | | 212.69 | | | | | | |
| PART B – MEDICAL PAYMENTS | | | | | | | | |
| EA PER $    50,000 | | 169.64 | | | | | | |
| PART C – UNINSURED MOTORISTS | | | | | | | | |
| BODILY INJURY    EA PER $   300,000 | | | | | | | | |
| EA ACC $   500,000 | | 99.60 | | | | | | |
| WAIVER OF COLL DEDUCTIBLE | | 21.66 | | | | | | |
| PART D – PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| COMPREHENSIVE LOSS       ACV LESS | D 100 | 258.72 | | | | | | |
| COLLISION LOSS       ACV LESS | D 500 | 586.80 | | | | | | |
| INCREASED RENTAL REIMBURSEMENT | | 26.48 | | | | | | |
| TOWING AND LABOR | | 7.36 | | | | | | |
| | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 1656.98 | | | | | | |

TOTAL PREMIUM – SEE FOLLOWING PAGE(S)

LOSS PAYEE
VEH 05   OAKLAND MUNICIPAL CU, NORTH HOLLYWOOD   CA

ENDORSEMENTS: ADDED 07-18-03 –  NONE
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)- A137(01)   A400CA(01)   5100CA(01)
6B
I 05322521 D04N   N

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
on this date    JULY 21, 2003

Bradford W. Rich
Secretary

Henry Vicellio Jr.
President

5000 C

**USAA CASUALTY INSURANCE COMPANY**

(A Stock Insurance Company)

9800 Fredericksburg Road – San Antonio, Texas 78288

CALIFORNIA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | | Veh | **POLICY NUMBER** |
|---|---|---|---|
| CA | | XXX | 01331 15 16C 7101 2 |

POLICY PERIOD:            (12:01 A.M. standard time)
EFFECTIVE JUL 18 2003 TO NOV 12 2003

**Named Insured and Address**

CAREY T CALDWELL
2928 FERNSIDE BLVD
ALAMEDA CA 94501-1672

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE Miles One Way | WORK/SCHOOL Days Per Week |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. • w/c=Work/School; B=Business; F=Farm; P=Pleasure

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES           LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| ------------------ADJUSTMENT REASON------------------ | | | | | | | | |
| SUBSTITUTION OF VEH | | | | | | | | |
| REVISED 6 MONTH PREMIUM...$ 1656.98   6 MONTH INCREASE...$ | | | | | | | 191.42 | |
| PRORATED INCREASE...$ 121.36 | | | | | | | | |
| | | | | | | | | |
| THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR: | | | | | | | | |
| VEH 05 – EXTENDED BENEFITS COVERAGE | | | | | | | | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
on this date    JULY 21, 2003

Bradford W. Rich
Secretary

Henry Viccellio Jr.
President

5008 C



PAGE 5

CIC    01331 15 16     7101



**SUPPLEMENTAL INFORMATION**

EFFECTIVE JUL 18 2003 TO NOV 12 2003

The following approximate premium discounts or credits have already been applied to reduce your policy premium costs.

NOTE: Age or senior citizen status, if allowed by your state/location, was taken into consideration when your rates were set and your premiums have already been adjusted.

```
VEHICLE 05
   ANTI-THEFT DISCOUNT                         -$   67.07
   CALIFORNIA AUTO POLICY DISCOUNT             -$   83.00
       *MULTIPLE POLICY DISCOUNT
   PASSIVE RESTRAINT DISCOUNT                  -$   16.77
```

JULY 21, 2003

### CALIFORNIA AUTOMOBILE INSURANCE IDENTIFICATION CARDS

You must show Evidence Financial Responsibility upon demand, to any law enforcement official or agency of California. To assist you with this requirement, we have attached two ID cards for each of your motor vehicles insured for liability coverage. One ID CARD should be kept with your motor vehicle at all times and presented as proof of coverage when an accident occurs and upon request of any law enforcement official. The other ID CARD should be kept in a safe place until needed for vehicle registration. For your convenience, you can request a duplicate Auto Insurance ID card on-line at usaa.com.

**53CA1  Rev. 3-01**                                    07/21/03

---

| CALIFORNIA EVIDENCE OF FINANCIAL RESPONSIBILITY | CALIFORNIA EVIDENCE OF FINANCIAL RESPONSIBILITY |
|---|---|
| **Name and Address of Insured** | **Name and Address of Insured** |
| CAREY T CALDWELL<br>2928 FERNSIDE BLVD<br>ALAMEDA CA 94501-1672 | CAREY T CALDWELL<br>2928 FERNSIDE BLVD<br>ALAMEDA CA 94501-1672 |
| CAREY T CALDWELL | CAREY T CALDWELL |

| Insurance Company<br>USAA CASUALTY INSURANCE COMPANY | Insurance Company<br>USAA CASUALTY INSURANCE COMPANY |
|---|---|

| Policy Number<br>01331 15 16C 7101 2 | Effective Date<br>07/18/03 | Expiration Date<br>11/12/03 | Policy Number<br>01331 15 16C 7101 2 | Effective Date<br>07/18/03 | Expiration Date<br>11/12/03 |
|---|---|---|---|---|---|
| Vehicle Make/VIN<br>MITSUBSH    4A3AA46H63E124753 | | Year<br>2003 | Vehicle Make/VIN<br>MITSUBSH    4A3AA46H63E124753 | | Year<br>2003 |

| This policy provides at least the minimum amounts of liability insurance required by the CA VEH CODE SECTION 16056 for the specified vehicle and named insureds and may provide coverage for other persons and other vehicles as provided by the insurance policy. | This policy provides at least the minimum amounts of liability insurance required by the CA VEH CODE SECTION 16056 for the specified vehicle and named insureds and may provide coverage for other persons and other vehicles as provided by the insurance policy. |
|---|---|

# ID CARDS

**California Evidence of Financial Responsibility**
**Keep this card.**

**IMPORTANT:** The California Financial Responsibility Act (Section 16020) of the Vehicle Code requires every owner or operator of a vehicle subject to the requirements of the Financial Responsibility Act to carry evidence of financial responsibility in the vehicle at all times. Under vehicle code (Section 16028) every driver involved in an accident must provide evidence of financial responsibility at the scene. Failure to comply is an infraction and shall be punishable by fines, impoundment or license suspension.

| CALLING FROM: | POLICY SERVICE | AUTO/PROPERTY CLAIMS |
|---|---|---|
| – SACRAMENTO | (916) 921-6366 | (916) 921-9060 |
| – ALL OTHER CALIFORNIA LOCATIONS | 1-800-531-8111 | 1-800-531-8222 |

# ID CARDS

**California Evidence of Financial Responsibility**
**Keep this card.**

**IMPORTANT:** The California Financial Responsibility Act (Section 16020) of the Vehicle Code requires every owner or operator of a vehicle subject to the requirements of the Financial Responsibility Act to carry evidence of financial responsibility in the vehicle at all times. Under vehicle code (Section 16028) every driver involved in an accident must provide evidence of financial responsibility at the scene. Failure to comply is an infraction and shall be punishable by fines, impoundment or license suspension.

| CALLING FROM: | POLICY SERVICE | AUTO/PROPERTY CLAIMS |
|---|---|---|
| – SACRAMENTO | (916) 921-6366 | (916) 921-9060 |
| – ALL OTHER CALIFORNIA LOCATIONS | 1-800-531-8111 | 1-800-531-8222 |

# EXHIBIT 2

### TERENCE J. McDONNELL, M.D.

*A Professional Corporation*
*Orthopaedic Surgery and Sports Medicine*

2999 Regent Street, Suite 203
Berkeley, California 94705
(510) 841-1266
Fax: (510) 841-0423
All Correspondence to Berkeley Office

12 Camino Encinas,
Orinda, CA 9456:
(925) 254-9358

July 11, 2005

Barbara B. Schafer, Esq.
Law Offices of Vincent B. McLorg
USAA General Counsel Department
One Post Street, Suite 3500
San Francisco, California 94104-5239

RE: **CAREY CALDWELL**
DOB: 7-24-54
DOL: 6-6-03, at approximately 2:30 p.m. on a Friday
SS#: Not Available

Dear Ms. Schafer:

At your request, I examined Carey Caldwell in my Berkeley office on July 12, 2005. She was accompanied by her attorney, Mr. Tomasik, as well as nurse Scheno.

## HISTORY OF INJURY

The patient is a 51-year-old Caucasian woman who is a curator at the Oakland Museum. The patient gives a history of being involved in what we shall call "motor vehicle "2" on 6-6-03, at which time she was the restrained driver of a 2001 Lexus. She said she was on a city street. She said her vehicle was "T-boned" on the driver's door by another automobile. She describes penetration into the car. She said she was pinned against the counsel. She goes on describe that she had to crawl out of the passenger side to get out of the vehicle. She also relates at that time she was status post-op for having a left hip revision in 2003. The police were on the scene. Evidently she refused transportation by an ambulance to the hospital. She said information was exchanged. She then got a ride to Alameda Hospital.

She was seen in the emergency room at Alameda Hospital. She said x-rays were taken, but she doesn't know the results. She was discharged home. She was told to see her regular physician.

**CAREY CALDWELL**
July 11, 2005
Page 2 of 32

<u>HISTORY OF INJURY</u> (Continued)

She said she waited for about two weeks to see orthopedist Schurman, who had previously operated on her. She said he examined her. He took x-rays which showed the "hip angle was out of alignment." At that time he didn't recommend any surgery. Dr. Schurman followed her. The patient then developed symptoms suggestive of "RSD." She said she was seen by her neurologist, Dr. Berry, who in turn referred her to a vascular consultant at Stanford. She doesn't recall his name. However, he didn't feel this was a vascular problem.

She said at the first of August her left lower extremity became red and swollen in the leg and foot. For that reason, she went to the emergency room at Alta Bates Hospital. She said there was some question about a blood clot. She was examined. It was diagnosed that she had a fracture around the prosthesis of the femur. She said she was admitted to Alta Bates Hospital for about three days until a bed was cleared at Stanford. She was then transferred to Stanford.

Dr. Schurman saw her and he recommended surgery. On 8-6-03, the patient was taken to the operating room where she describes the placement of plates, screws and wires being applied to the left femur. She was hospitalized at Stanford for about a week. She was then transferred to a rehabilitation hospital for about four weeks. She was then discharged home.

She describes getting some home physical therapy. When she was able to, she got some outpatient physical therapy. She said this was one time every one to two weeks. She said she didn't do any outpatient physical therapy until the present time.

She said Dr. Schurman saw her in follow up and the fracture of the femur evidently healed okay. However, he also evaluated her for some neck and back pain. She describes x-rays, as well as MRI's of the upper back. The results are unknown.

She said she was referred by Dr. Schurman initially to Dr. Mitrah who she said is a spine surgeon. She thinks she first saw him in perhaps August 2003. She doesn't remember what kind of treatment he gave her. She said she went back to see him regarding the right neck and shoulder in perhaps April of 2005. That was for one visit. She said he ordered some MRI's of the neck and upper back. Evidently she is scheduled to see him relatively soon. She has also continued to be seen by Dr. Schurman every three months.

She goes on to relate that she was also referred to Berkeley Urological Group for bladder incontinence. She thinks she started seeing them in the fall of 2003 or early 2004. She said she has a "wet bed syndrome."

CAREY CALDWELL
July 11, 2005
Page 3 of 32


## PATIENT COMPLAINTS

1. The patient says she has pain in the right neck and trapezius area that starts out "achy and throbbing" and on occasion may become more severe. There is no particular pattern to this. She says the pain is an 8-9/10 scale and can become worse. She said the pain would radiate down the right upper extremity to the elbow, but not below. She said that sometimes this is associated with headaches. The patient's pain is generally daily and constant. However, she later said that it comes and goes for no apparent reason.

2. The patient says she has an "achy pain" around the left hip and left knee area that she says is secondary to malalignment. The patient's pain is in the lateral aspect of the femur and she said she can feel "hardware" over the lateral aspect of the thigh. These symptoms can occur daily to one to two times a week. When the symptoms come on, they last for a day. The patient notes that she had a previous problem with her left hip. It was injured in a motor vehicle accident in 1975. She then had a total hip arthroplasty and a revision of the total hip arthroplasty about three months prior to the motor vehicle accident in question.

3. The patient said she has "reflex sympathetic dystrophy" in the left leg and foot. Those symptoms occur daily. The symptoms evidently worsen in the dorsal aspect of the foot. However, she concedes that the symptoms become much, much better. The patient denies any previous problem such as this.

4. The patient has the noted bladder problem. The patient denies any previous problem such as this.

5. The patient says that she has pain in her low back, below the belt line level, greater on the left than the right. She said it is an "achy pain" that she rates as a 3/10 scale. She said it could be more severe pain that she rates as a 7/10 scale. She said it occurs almost daily. She said there is no pattern. The patient's dull pain might last for hours. She describes stretching, but she doesn't take any medication for that. She describes that she has had a previous problem with her low back.

## JOB HISTORY

The patient has been a curator at the Oakland Museum for 18 years. Her attorney didn't want me to get into her prior work history.

**CAREY CALDWELL**
July 11, 2005
Page 4 of 32

## OFF WORK ACTIVITIES

The patient says she likes to hunt for mushrooms and hike.

## PAST MEDICAL HISTORY

Childhood Illnesses:  She said she had the usual illnesses growing up in Tennessee and South Carolina.

Childhood Injuries:  None.

Adult Illnesses:  The patient was diagnosed with rheumatoid arthritis perhaps three or four years ago. Evidently there is some question about an autoimmune disease. She has Raynaud's Phenomenon and Sjogren's Syndrome of the eyes. She also has a history of a brain tumor with subsequent seizures.

Adult Injuries:  The patient has been involved in two only motor vehicle accidents with injuries. "Motor vehicle accident #1" was in 1975, at which time she had an injury to her left hip with subsequent surgery. She said she was off work for some time with that injury. "Motor vehicle #2" is the motor vehicle accident in question. She denies any work injuries. She denies any slip and fall accidents.

Allergies:  The patient is allergic to Penicillin.

Present Medications:  The patient takes Depakote, Zoloft, Plaquenil, Evazac and some bladder medication. She notes she takes no anti-inflammatory drugs or pain medications.

Surgeries:  The patient had a T&A. She has had the initial hip surgery in 1975. She has had a total hip arthroplasty in 1988 and a revision in 2003. She had the recent femur surgery. She also has a history of a brain tumor excision.

Hospitalizations:  She was hospitalized for the above surgeries.

Present Physician:  Dr. Schurman, orthopedist.
Dr. Barry, rheumatologist.
Dr. Mitrah, spine surgeon.
Dr. Christine, neurologist.

Family History:  She thinks her mother had rheumatoid arthritis.

**CAREY CALDWELL**
July 11, 2005
Page 5 of 32

## PAST MEDICAL HISTORY (Continued)

Review of Systems:   I asked the patient to evaluate her health. She thought she was "pretty good." She admits to smoking ½ pack cigarettes a day. She said she has an occasional alcoholic beverage. She denies the use of recreational drugs. She says her rheumatoid arthritis is considered "well controlled" by her rheumatologist.

### Appearance

Height:            5'5-½"

Weight:            Her weight is stated to be 130 pounds. She said she is down 20 pounds, which she gained during the rehab.

Handedness:        Right handed.

I asked the patient how much improvement she thinks she has made since the date of the motor vehicle accident in question. She doesn't think she is improved with walking secondary to the malalignment of the hip. She goes on to say that she thinks her neck and shoulder symptoms are getting worse. I asked her how she felt today. She said her neck hurts and she is developing a headache. She thinks that the neck and shoulder symptoms are perhaps associated with the use of the cane she carries in her right hand.

## LUMBAR SPINE EXAMINATION

### Inspection

Scoliosis, lordosis and pelvic obliquity were none.

Gait: Antalgic

Walks on toes and heels are normal.

Trendelenburg: The patient has a positive Trendelenburg on the left with thrusting the trunk over the hip for stabilization.

### Physical Examination

There were no scars or muscle spasms.

**CAREY CALDWELL**
July 11, 2005
Page 6 of 32

## LUMBAR SPINE EXAMINATION (Continued)

### Atrophy

There was no noted atrophy.

### Measurements

Girths:
Thighs:     38-½ cm. left, 38-½ cm. right
Calves:     34-½ cm. left, 35 cm. right

### Tenderness

The patient has no tenderness to palpation or percussion across the paraspinous muscles, buttocks or trochanters.

Paraspinous muscles, buttocks and trochanters were negative.

### Range of Motion of the Lumbar Spine

Flexion, extension, lateral bending, right and left and rotation are 100%

### Comment

The patient's back is evidently asymptomatic today and her examination is normal.

### Neurological

Straight leg raising, seated and supine and crossed straight leg raising were said to cause low back pain.

The deep tendon reflexes (Patellar and Achilles) are 4+ bilaterally.

### Sensation

Sensation is normal.

**CAREY CALDWELL**
July 11, 2005
Page 7 of 32

## LUMBAR SPINE EXAMINATION (Continued)

### Muscle Strength

Quadriceps, anterior tibial, extensor hallucis longus, peroneals, gastrocnemius and soleus: The patient has weakness of her hip abductors on the left. The muscle groups of the right lower extremity are normal, as are the muscle groups in the left lower extremity. There is some increased rubor in the left foot and leg.

### Non-Organic Physical Signs

Flexed thigh test is negative.

### Pulses

Dorsal pedis and posterior tibial pulses are not palpable in the left or right foot to my touch.

## CERVICAL SPINE EXAMINATION

### Inspection

Posture, head carriage and cervical lordosis were normal.

Shoulder levels were approximately equal.

There were no scars and no swelling.

### Physical Examination

Cervical traction: Normal

Cervical compression: Normal

### Measurements

Maximum Biceps:     28 cm. left, 27 cm. right

Maximum Forearms: 23 cm. left, 24 cm. right

### Atrophy

Intrinsic, thenar and hypothenar are none.

**CAREY CALDWELL**
July 11, 2005
Page 8 of 32


CERVICAL SPINE EXAMINATION (Continued)

Tenderness

The patient has no tenderness on physical examination to percussion or palpation across the paraspinous muscles, cervical spine or trapezius today.

No muscle spasm was present.

Cervical spine, paracervical musculature and suprascapular/trapezius were negative.

Range of Motion of the Cervical Spine

Flexion, extension, rotation, right and left and lateral flexion, right and left are 90%.

Muscle Strength of the Neck

The patient can flex and extend her neck against resistance with good power.

Shoulder Girdle: The patient can elevate her arms above the horizon against resistance without difficulty.

Shoulder, elbow, forearm, wrist and hand are normal.

Grip Strength

The patient has good firm grip strength on manual testing.

Neurological

The deep tendon reflexes (biceps, triceps and brachioradialis) are 4+ bilaterally.

Sensation

Sensation is normal.

**CAREY CALDWELL**
July 11, 2005
Page 9 of 32

## LEFT HIP EXAMINATION

### Inspection

Scars: There is an extensive incision extending over the buttocks posterolaterally and then down the length of the femur to the distal third. The patient outlines approximately 14 cm. of extended incision for her operative repair on her femur.

Right Hip: Flexion, extension, rotation and lateral flexion of the right hip is normal.

Left Hip: Examination of the left hip shows internal rotation of approximately 50 degrees. External rotation was approximately 5 degrees.

Internal and external rotation on the right side was approximately 40 degrees.

Examination of the lateral hip scar demonstrated no significant irritability to palpation or percussion. The patient demonstrated 3/5 hip abduction power lying on her side.

### Comment

I was easily able to palpate and manipulate the left lower extremity foot without any evidence of significant RSD on examination.

## X-RAY EXAMINATION

No x-rays were taken.

## OUTSIDE X-RAYS, MRI'S

There is a CT of the head from Alameda Hospital dated 7-23-98.

There is an AP of the abdomen and pelvis from Alameda Hospital dated 6-6-03. There is a hip replacement inside on the left hip.

There is a lateral of the spine from Alameda Hospital dated 6-6-03. The patient is osteoporotic. She has narrowing of the L5-S1 interspace and mild degenerative changes at several lumbar levels anteriorly.

There are x-rays of the left hip from Alameda Hospital dated 6-6-03. Unfortunately on this copy, it is hard to see the greater trochanter. There is also an arrow indicating a possible pubic ramus fracture. The frontal component is noted to be cemented into the intramedullary canal. The cup is somewhat vertical. The fixation is a screw penetrating the intertable of the pelvis.

**CAREY CALDWELL**
July 11, 2005
Page 10 of 32

<u>OUTSIDE X-RAYS, MRI'S</u> (Continued)

There is a lateral view of the left hip from Alameda Hospital dated 6-6-03. This shows no abnormality in the femur and the femoral component is well seeded. There is calcification in the area of the hip abductors from her previous surgery and some ossification.

There are x-rays dated 8-2-03 from Alta Bates Medical Center. The AP of the hip and pelvis shows a fracture of the mid shaft of the femur, which is at the junction of the middle and distal third of the prosthesis. There is no displacement noted. The fractures of the pubis and the superior and inferior pubic are noted. Arrows identify that. The calcification over the hip abductors is also noted. This appears to be old.

There are x-rays of the left hip from Stanford Hospital and Clinic dated 2-18-03. There is a hip arthroplasty in place with obvious loosening with erosion of the medullary canal. The cup seems to be well seated.

There are other films from Stanford Hospital and Clinic dated 7-22-03. Again, the hip is noted. The femur appears to be okay. I don't see any obvious change in the relationship. This section of films also notes some previous x-rays of the hip replacement indicating the loosening of the femoral components dating back to 2000.

There are x-rays of the hip from Stanford Radiology dated 9-30-03. There is now an external plate held proximally with circumferential wire at the fracture site of the femur. The relationship of the femoral component looks unchanged. There are three screw fixations distal to the femoral component.

There are additional films of the hip from Stanford taken on 1-27-04. It looks like the femur fracture is held. There is no change in the position of the internal fixation devices.

There is a second film packet. These are x-rays of the left hip and femur from Stanford Hospital dated 11-4-03. This shows the internal fixation device in place. It looks like there was teleformation around the femur fracture. The position appears to be unchanged.

The last film packet has chest x-rays from Alta Bates Medical Center dated 8-1-03. There appears to be some osteoporosis in the dorsal spine on the lateral of the chest.

There is a report of a left hip x-ray dated 8-2-03 and a routine chest x-rays dated 8-1-03 from Alta Bates Medical Center. The impression was: