**CAREY CALDWELL**
July 11, 2005
Page 28 of 32

REVIEW OF MEDICAL RECORDS (Continued)

There is a file entitled Hospital M.D. Records from Carey Caldwell. The files included in this are American Medical Response, Stanford Hospital, Alta Bates Hospital, Alameda Hospital and Marin Orthopedic. These files appear to be copies of records we have previously discussed.

There is another file entitled "Rehabilitation Records of Carey Caldwell." This file contains files from Sharon Heights Rehabilitation, Sports Orthopedic and Rehabilitation, Nancy Burke, P.T., Robert Dreyfuss, M.D., Dr. Curry, Sutter VNA & Hospice and Advanced Respiratory Care. The records from Sharon Heights Rehabilitation are records we have previously reviewed.

The records of Sports Orthopedic and Rehab were records we have previously discussed.

The records from Nancy Burke, P.T. was records we have previously discussed.

The medical records from Richard Dreyfuss, M.D. were reviewed.

There is a note on 6-16-03. This notes, "injured in auto accident on 6-16-03."

There is a note on 6-30-03. This notes, "left ankle swollen past 4-5 days. Left costal area painful."

There is a note on 9-3-03. This notes, "left leg diagnosed as sustained fracture, required surgery."

There is a note on 9-15-03. This notes, "left ankle and foot swollen and pitting edema on dorsum, painful."

The records from Mary Curry were reviewed. There is a note on 6-23-03.

There is a note on 9-22-03.

There are also records from Sutter VNA & Hospice which we have previously discussed.

There are records from Advanced Respiratory Care, which we have previously discussed.

**CAREY CALDWELL**
July 11, 2005
Page 29 of 32

## DIAGNOSIS

1. Internal rotational position femoral component left total hip replacement following motor vehicle accident.

2. History of chronic neck pain.

3. History of chronic low back pain.

4. History of possible RSD of the lower extremity.

5. History of incontinence and bladder problem.

6. Status post op excision of brain tumor with subsequent radiation and chemotherapy.

7. Deconditioned musculature of left hip secondary to multiple surgeries.

## DOCTOR'S COMMENTS

As I look at this woman's multiple and extensive medical file, I am struck with the unusual history in this particular case. The changing of rotation in the femoral component with rotation is somewhat unusual. However, the records by Dr. Schurman indicate that she had decent orientation of rotation prior to the motor vehicle accident. Of course, this was difficult to diagnose on x-ray and I don't think anyone initially appreciated it. However, I noticed that the patient has been having trouble with a "limp" even prior to her hip revision operation. She had weakness of her abduction muscles, which is what she has now.

Therefore, although she has excessive internal rotation of the hip it is really not a painful hip on examination. Although the patient walks toes in, her main problem with gait is the weakness of her hip abduction that is secondary to the multiple surgeries that she had on her hip. I agree with Dr. Schurman in his note of May of 2005 about her evaluation.

I think the complaints of neck pain and low back pain is consistent with multiple things, including her longstanding history of symptoms in those areas, including her knees. As we noted Dr. Barry worked her up, who is a rheumatologist for suspected rheumatoid arthritis.

I see nothing in the records that would indicate to me that there is any sequela that I can find from the motor vehicle accident regarding her neck and low back.

**CAREY CALDWELL**
July 11, 2005
Page 30 of 32

<u>DOCTOR'S COMMENTS</u> (Continued)

The RSD regarding the left lower extremity is unclear to me. She does have some increased rubor, which is redness. However, this limb is not something that I would see with RSD. I would be more concerned about some vasculitis associated with an autoimmune disease. I do not think this woman has RSD.

As I noted previously, I did not address the urological problem. In all of the records we have there are no records from Berkeley Urology regarding that particular problem.

In summary, I think that this woman did sustain a rotation of the femoral component from the motor vehicle accident in question. It has altered her gait somewhat, but not excessively. The limp that she has in associated with a longstanding hip problem with multiple operations that have left her hip weakened. However, I don't think the motor vehicle accident in question is the cause of that.

The records also seem to indicate that the patient had multiple falls that were actually prior to the March 2003 operation. We know from looking at the x-rays that this lady did not sustain a periprosthetic fracture of the femur in this motor vehicle accident. The fracture was secondary to a fall later on. I think is pure conjuncture to think that she fell simply because of the motor vehicle accident. Clearly she had weakness from her prior operations. She had brain surgery. She evidently had some history of alcohol abuse, which could all be attributed to the possibility of her falling.

The only residual that I can really attribute to the motor vehicle accident is the internal rotation aspect of the left hip.

**SUMMARY OF THE CASE**

The patient is a 51-year-old woman who was involved in a motor vehicle accident on 6-6-03, at which time she was the restrained driver of her 2001 Lexus. She was hit on the driver's door. She describes having to crawl out the other side to exit the vehicle. The police were on the scene, however the patient refused an ambulance. Information was exchanged and she got a ride to Alameda Hospital, where she was seen in the emergency room.

Dr. Schurman, who is her orthopedic surgeon, later saw her in follow up at Stanford. X-rays were taken and she was followed up as noted in the records.

Initially the internal rotation deformity was not clearly understood. The patient had subsequent falls and was seen in early August at Alta Bates Medical Center where she had a periprosthetic fracture of the left femur.

**CAREY CALDWELL**
July 11, 2005
Page 31 of 32

## SUMMARY OF THE CASE (Continued)

She was admitted to Alta Bates Medical Center, but was then transferred to Stanford where Dr. Schurman performed an open operation in which he plated the femur secured with screws and circumferential wire.

The patient was then transferred to a rehabilitation hospital and then discharged home.

Dr. Schurman saw her in follow up as noted. She was also seen in follow up by Dr. Midrah regarding her back complaints. She was also seen at Berkeley Urology for a urological problem.

She currently has complaints of neck pain, left hip ache, left knee pain and malalignment and low back pain. She thinks she has RSD of the left lower extremity. She voices bladder problems.

Her physical examination was as noted. The striking part of the examination was really the internal rotational difference in the total hip replacement as noted.

## WAGE LOSS

The patient said she was off work for one year.

## REVIEW OF MEDICAL TREATMENT

This woman has had extensive medical treatment dating back to the 1980's. However, regarding medical treatment from the motor vehicle accident in question, I think her treatment seemed to be appropriate for the hip. The patient could certainly live with the amount of internal rotation deformity she has of the hip following the motor vehicle accident.

I think the fall that she had that resulted in a second operation could not be blamed on the motor vehicle accident in question in that the patient had weak abductors and had a history of falling prior to the injury to the femur. I think that physical therapy would be reasonable following this motor vehicle accident for a window of six to eight weeks. I would think treatment after that length of time would revert back to her chronic history of neck and back pain as documented in her medical records.

## FUTURE MEDICAL TREATMENT

I agree with Dr. Schurman in that I don't think it is necessary that this woman have another hip operation to correct the inversion of her left total hip replacement. As far as I can tell, there was no structural damage done to the replacement itself. Although we know that hip replacements don't last forever and this lady may need another procedure some time down the road. However, I don't think this is related to the motor vehicle accident in question.

**CAREY CALDWELL**
July 11, 2005
Page 32 of 32


## OBJECTIVES

The patient had objective physical findings on examination as noted.

## FUNCTIONAL IMPAIRMENT

The twisting of the femoral component in the motor vehicle accident in question should resolve in six to eight weeks. Likewise the chronic neck and back pain that she had should also resolve in that window of time.

## ETIOLOGY

The patient relates the symptoms as noted to the motor vehicle accident in question, although clearly the neck and low back pain were a chronic problem and did not appear to originate from the motor vehicle accident in question.

## FINAL NOTE

If I may be of further assistance, please feel free to contact me.

Very truly yours,

TERENCE J. McDONNELL, M.D.
Orthopaedic Surgeon

TJM:par

# EXHIBIT 3

# Law Offices of Joseph E. Tomasik

The Studio Building
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: (510) 848-0500
Facsimile: (510) 848-0537
Website: www.lawjt.com

February 19, 2004

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

Re:  Claim (policy) No.:   13311516-7101-5-8234
     Your Insured:        Carey T. Caldwell
     Date of Loss:        June 6, 2003
     Claimant:            Carey T. Caldwell

Dear Mr. Umamoto:

## I. INTRODUCTION

As you are aware, I represent Carey Caldwell regarding the injuries she sustained as the result of a serious automobile collision which took place on June 6, 2003 in Oakland, California. On December 31, 2003, we settled with defendant Gwendolyn Harrison for her $100,000 policy limits with USAA, and we have enclosed a copy of the settlement check. At the time of the collision, Ms. Caldwell had underinsured motorist (UIM) coverage with USAA with policy limits of $300,000. This letter and the accompanying enclosures constitute our demand package for Ms. Caldwell under the UIM portion of her automobile insurance policy.

## II. STATEMENT OF FACTS

This collision occurred within the intersection of Madison and 10th Streets in Oakland, California. Ms. Caldwell was traveling southbound on Madison in her 1993 Lexus, and as she entered the intersection of 10th Street, Gwendolyn Harrison, who was driving a Toyota Sequoia westbound on 10th Street, failed to stop at the red traffic signal. The front end of Ms. Harrison's SUV collided with the driver's side door of Ms. Caldwell's vehicle. The severe force of this side impact caused a large intrusion of the driver's door directly into the left side of Ms. Caldwell's body. The damage to Ms. Caldwell's door was so substantial that she could not open her driver's side door, and she was forced to exit her vehicle from the passenger side.

## III. LIABILITY

This collision was investigated by Oakland Police Department and a Traffic Collision Report was prepared. Based on the statements of the three independent witnesses, the reporting officer found that Ms. Harrison was completely at fault for the collision for failure to stop at a

to be for the foreseeable future.

Ray Umamoto
February 19, 2004
Page 2

red light, a violation of Vehicle Code §21453(a).  USAA did not contest liability in the third party claim with Ms. Harrison, and it is my understanding that USAA is not contesting liability in the UIM claim.

## IV.  PRIOR MEDICAL TREATMENT

Ms. Caldwell underwent a total replacement of her left hip in 1988.  On March 19, 2003, she had a revision of the left hip replacement by Dr. David Schurman at Stanford Hospital in Palo Alto, California.  Dr. Schurman's chart notes of April 1, 2003 state that Ms. Caldwell was not having any pain with range of motion in her hip.  Ms. Caldwell was seen again by Dr. Schurman on April 29, 2003 at which time it was noted that she had only minimal discomfort in her left hip or leg.  At the time of the June 6, 2003 collision, Ms. Caldwell was approximately 11 weeks status post revision and she was experiencing virtually no pain in her left hip or leg, and she was able to walk without crutches.  While she had very little symptomology from her previous surgery at the time of the collision, Ms. Caldwell obviously was extremely vulnerable to trauma.

## V.  MEDICAL TREATMENT AND DAMAGES

Immediately following the collision, Ms. Caldwell felt stunned and extremely shaken as a result of the sudden impact.  She felt an onset of pain in her low back, left leg and surgically repaired left hip.  As the pain became more severe, she sought medical treatment at Emergency Room at Alameda Hospital within a few hours of the collision.  The ER records state, "Carey T Caldwell is a 48-year-old female who reports being the driver involved in MVA AT 2 PM TODAY WHEN HER CAR WAS T-BONED ON THE DRIVER'S SIDE BY ANOTHER VEHICLE WHICH RAN A RED LIGHT.  Now complains of LEFT HIP AND LOWER BACK."  Under physical examination, the ER records state, "Arrived in the Emergency Department WALKING WITH CRUTCHES."  X-rays of Ms. Caldwell's left hip and spine did not reveal any fractures, but there were no X-rays were taken of her femur.

Follow-up orthopedic care was provided by David J. Schurman, M.D., at Stanford Hospital beginning on June 16, 2003.  He noted left flank, left hip and left leg pain which had been persistent since the collision.  He explained to Ms. Caldwell that "in this early phase after the injury, it is possible there are occult fractures which would not be seen until a periosteal bone begins to form closer to six weeks after the injury."  On July 22, 2003, Ms. Caldwell returned to Dr. Schurman limping with left leg and hip pain with occasional numbness and tingling of her toes.  X-rays revealed a question of retrograde eversion of the femoral component of the left hip.  A work disability slip was prepared and signed by Dr. Schurman.

Ray Umamoto
February 19, 2004
Page 3

Ms. Caldwell continued to suffer from low back pain, and constant left hip pain including redness and swelling. She was mobile only with the use of crutches, and was referred to physical therapy. Despite her best efforts, Ms. Caldwell's left hip and leg pain persisted and slowly became worse. On several occasions, due to her left leg pain and weakness, Ms. Caldwell felt her left leg give out which caused her to stumble. On July 25, 2003, the swelling, redness, and pain in her left leg and hip became so severe that an ambulance was called and Ms. Caldwell was transported to Alameda Hospital for treatment.

On August 1, 2003, Ms. Caldwell presented to Alta Bates Medical Center with complaints of persistent left leg pain and swelling, left hip pain, and decreased mobility since the June 6th motor vehicle collision. To rule out a blood clot, an EKG was performed and chest X-rays were taken. Left hip X-rays revealed a **left mid-femur fracture** surrounding the femoral component with some anterior angulation of the distal fragment. Ms. Caldwell was admitted to the hospital for stabilization, and was transferred to Stanford Hospital on August 4, 2003. On August 6, 2003, Dr. Schurman performed an open reduction, internal fixation surgery of the left periprosthetic femur fracture, and **implanted a nine-hole metal cable plate with screws** to stabilize the bone. On August 10, 2003, Ms. Caldwell was transferred to Sharon Heights skilled nursing facility for physical and occupational therapy, and pain control. Ms. Caldwell was discharged from Sharon Heights on August 28, 2003. Ms. Caldwell is also suffering **urological dysfunction** which may be related to the collision.

In the third party case, defense counsel questioned whether the femur fracture was sustained in the subject collision, or whether it was sustained in a subsequent fall. There is an erroneous reference in Ms. Caldwell's medical records that her fracture was sustained in a fall due to weakness and pain from the collision. Since the earliest X-rays were of her surgically repaired hip did not reveal the fractured femur, apparently her doctor reasoned the fracture must have been caused by a fall. However, there is overwhelming evidence that Ms. Caldwell did not fracture her femur in a fall, and defense counsel in the third party case agreed.

First, the Alameda E.R. noted that Ms. Caldwell was experiencing substantial left leg and hip pain on the day of the collision, and her pain gradually increased over time. Second, there is no indication in the medical records of Ms. Caldwell reporting that she injured her left leg in a fall. The August 4, 2003 records from Alta Bates Hospital merely state "She states that she has fallen on a couple of occasions due to pain and her leg giving out." While weakness and pain from her femur fracture may have caused her leg to give out, there is nothing that indicates that any of these falls were serious, or that the falls caused the left femur fracture, or even that they caused any increase in pain. All of the references to Ms. Caldwell reporting left leg pain relate to the motor vehicle collision.

Ray Umamoto
February 19, 2004
Page 4

Ms. Caldwell was experiencing left leg pain severe enough to cause her to go the Alameda Hospital Emergency Room the day of the collision, and the records are clear that her pain gradually worsened before she went to the Alta Bates ER in early August. Either the femur fracture was missed in the earlier X-rays (since the focus was understandably on her previous hip surgery), or the femur was weakened by the collision and the fracture developed over time. BAJI 4.30 provides that a collision need only be a substantial factor ("more than a remote or trivial factor"), and it can be one of many factors. Even if Ms. Caldwell had fractured her left femur as the result of falling due to weakness and pain in her leg from the collision, the collision would still have been a substantial factor in causing the fracture and surgery. Defense counsel for USAA in the third party case thoroughly investigated this issue in reviewing her medical records and taking her deposition. Defense counsel obviously concluded that the collision was a substantial factor in necessitating the surgery, as Allstate paid the $100,000 policy limits.

## VI. ECONOMIC DAMAGES

At the time of the June 6, 2003 collision, Ms. Caldwell had been working full time as a museum curator (Curator of Special Projects) at the Oakland Museum where she had worked since 1987. Her job duties included managing complex exhibitions, conducting research, seeking and identifying financial resources, and overseeing many museum responsibilities. Ms. Caldwell's annual salary is $74, 500. Although Ms. Caldwell attempted to return to work following the collision for an important exhibit opening, she has remained off work since June 6, 2003 until the present.

A. **Medical Specials**

   1. **Treatment**                                    **Amount**
      American Medical Response                      $  1,036.30
      Stanford Medical Center                           69,741.28
      Stanford Hospitals and Clinics                     8,402.00
      Alameda Hospital                                   2,087.00
      Alta Bates Medical Center                         15,532.10
      Berkeley Emergency Medical Center                    339.00
      Nancy Burke, M.D.                                  1,315.00
      Mary Curry, L.Ac., OMD, Ph.D                         325.00
      Sharon Heights Care and Rehab                      8,100.00
      Robert N. Dreyfuss, DMD                              300.00
      Sports Orthopedic and Rehabilitation                 519.00
      Robert D. Morgan, P.T                                173.00
      Annie Tyson                                          480.00
      Jeffrey A. Wieder, M.D.

Total Medical Specials:        $108,349.68

Ray Umamoto
February 19, 2004
Page 5

2. **Prescriptions and Medical Supplies/costs**
   Bedside commode                                                $      122.50
   Home assistance, Angie Delgado                           702.00
   Taxi transportation to medical appointments         156.00
   Prescription medication                                        40.00
                                                   $   1,020.50

B. **Wage Loss**
   June 6, 2003 - present  (7.5 months)                    $ 49,666.64

## VII. CONCLUSION

Prior to the subject collision, Ms. Caldwell had made an excellent recovery from surgery to revise a left hip replacement. Although she had very little symptomology from that surgery at the time of the collision, she obviously was very vulnerable to trauma, making her the quintessential "Eggshell" plaintiff. This is a clear liability case involving a severe collision with major intrusion of the driver's side door directly into the left side of Ms. Caldwell's body. Ms. Caldwell went to the Emergency Room the day of the collision with substantial left side pain, and eventually underwent major reconstructive surgery with installation of metal hardware to stabilize a fractured left femur.

Although there were some erroneous notes that the femur fracture was sustained in a fall, the vast majority of the evidence in this case indicates the collision either caused the fracture, or was a substantial factor in causing the fracture to develop. There is no description of any incident in which Ms. Caldwell struck the left side of her body in a fall or otherwise injured her left leg in a fall. The Alta Bates records merely mention in passing that her leg was giving out on her due to pain and weakness from the collision, and somehow this became construed as the cause of her fracture. Even if Ms. Caldwell had fractured her femur due to pain and weakness from the collision, the collision still would be a substantial factor in causing the fracture under BAJI 4.30.

Six months post-surgery, Ms. Caldwell still has the significant left hip and lower back pain that she has had since the collision, she has developed urological dysfunction, and still has internal rotation of her left leg. Whereas before the collision Ms. Caldwell was walking normally without crutches, she now must rely on crutches to walk any significant distance. Her enjoyment of life, her capacity to perform her long-time curator job, and even her ability to perform basic daily functions, has been severely impinged as a result of the subject collision, and will continue to be for the foreseeable future.

Ray Umamoto
February 19, 2004
Page 6

     Ms. Caldwell had UIM coverage with USAA at the time of the collision with policy limits of $300,000/$500,000. With **nearly $160,000 in economic damages**, Ms. Caldwell's past damages alone exceed her $300,000 limits. Given that she continues to have significant pain and significant limitations with walking, it is clear that her total past and future damages from the collision *far* exceed the $300,000 policy limits. Thus, Ms. Caldwell is hereby offering to settle her UIM claim with USAA for the $300,000 limits, minus whatever set-offs or reductions USAA is entitled to under the policy. I believe that USAA has all the information necessary to evaluate this claim and realize that Ms. Caldwell's damages far exceed the policy limits, but if you need any additional information, please let me know at your earliest convenience.

     Thank you very much for your consideration of this claim, and I look forward to working with you to resolve this matter.

                   Very truly yours,

                   LAW OFFICES OF JOSEPH E. TOMASIK

                   *Joseph Tomasik*

                   JOSEPH E. TOMASIK

JET:lc
Enclosures

to be for the foreseeable future.



RE
CA. orig

43

# EXHIBIT 4

Raymond Umamoto
March 18, 2004
Page 2

femur. Thus, "the names and addresses of all her medical providers that led up to her surgery in 1988" for a hip replacement are not relevant to this claim. I do know that Dr. Schurman, who performed both of Ms. Caldwell's surgeries in 2003, also performed the 1988 surgery as well.

In regard to the nature and extent of all medical bills actually paid by medical insurance, I do not know the precise figures, but you are entitled to subpoena those documents from Blue Cross if you need them to evaluate this claim. In regard to your request for "proof of loss of earnings, employment history, pre-accident to present," we have already provided all of this to you in our February 20, 2004 demand package and the February 23, 2004 follow up letter enclosing the wage stub. We once again reiterate our demand for the $300,000 UM policy limits, minus whatever set-offs USAA may have under Ms. Caldwell's policy.

Thank you very much for your consideration of this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

Joseph Tomasik

Joseph E. Tomasik

JET/lc

# EXHIBIT 6

**USAA**®

USAA CASUALTY INSURANCE COMPANY
9800 Fredericksburg Road, San Antonio, TX 78288


JOSEPH E TOMASIK, ATTNY
THE STUDIO BLDG
2039 SHATTUCK AVE STE 400
BERKELEY CA 94704-0000


March 23, 2004

Policyholder: Carey T. Caldwell
Reference Number:  13311516-7101-5-8244
Date Of Loss:  June 6, 2003
Loss Location:  Oakland, California
Your Client: Carey Caldwell

Dear Mr. Tomasik:

We have received your correspondence dated March 19, 2004.

Your claim has not been concluded because we are in the process
of reviewing what we have in our file to date on this very
complex injury claim being made by your client. Once we complete
this review, we will be in a better position to know if or what
expert/s are needed to understand the accident caused or
aggravated loss.

When the above has been received, your claim will be given prompt
attention.

It is also understood that we are to try and settle this claim
prior to formal arbitration. If this is not the case please let
me know.

If you wish to discuss this matter, please contact me.

Sincerely,

Ray Umamoto
Casualty Claims Examiner
USAA Western Regional Office
Phone:  800-531-8222, Extension 46796
Fax Phone:  888-531-8722

# EXHIBIT 7

# Law Offices of Joseph E. Tomasik

The Studio Building
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: (510) 848-0500
Facsimile: (510) 848-0537
Website: www.lawjt.com

April 13, 2004

*Via Facsimile (888/531-8722) & U.S. Mail*

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

|       |                     |                      |
|-------|---------------------|----------------------|
| Re:   | Claim (policy) No.: | 13311516-7101-5-8234 |
|       | Your Insured:       | Carey Caldwell       |
|       | Date of Loss:       | June 6, 2003         |
|       | Claimant:           | Carey Caldwell       |

Dear Mr. Umamoto:

Thank you for your March 23, 2004 letter in which you state "we are in the process of reviewing what we have in our file to date on this very complex injury claim." We originally sent you our demand letter (which included all the medical records and bills) on February 19, 2004, and thus USAA has had nearly two months to review this claim. California Fair Claims Settlement Practices Regulation §2695.7 provides that every insurer "shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part." Thus, it appears that USAA is in violation of this California Insurance Regulation.

In addition, California Regulation §2695.7 (d) provides "where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge." If USAA is not willing to accept Ms. Caldwell's offer to settle for the policy limits (minus any set-offs), we request that USAA provide all the factual and legal bases supporting its decision, as we believe there is no reasonable basis for rejecting Ms. Caldwell's settlement offer.

Moreover, Ms. Caldwell's claim is hardly a "very complex injury claim." First, liability is absolutely clear and is not in dispute. Second, the impact involved severe trauma to Ms. Caldwell's body, as the adverse driver's vehicle smashed Ms. Caldwell's driver's side door <u>directly into her left hip and leg</u>. Third, with medical bills approaching $110,000 and wage loss now exceeding $60,000, it is also abundantly clear that Ms. Caldwell's total damages <u>far</u> exceed her $300,000 underinsured motorist (UIM) policy limit. The only issue even remotely in dispute is causation, and even that issue is not very complicated.

Your correspondence appears to indicate that USAA is denying this claim based solely on Dr. Schurman's mistaken understanding that Ms. Caldwell's femur fracture was sustained in a fall. As discussed in detail in our demand letter of February 19, 2004, virtually all of the evidence indicates that the fracture was not sustained in a fall. First, Dr. Schurman's medical records from June 17, 2003 (Ms. Caldwell's first visit to him after the collision) state that "**it is**

*Board of Governors Alameda/Contra Costa Trial Lawyers Assoc.; Consumer Attorneys of California; ATLA*

Raymond Umamoto
April 13, 2004
Page 2

possible that there are occult fractures, which would not be seen until a periosteal bone begins to form closer to six weeks after the injury. ... She is limping along with left leg pain that she did not previously have prior to the auto injury. ... She is limited to her house just getting out of it once a day briefly and that is all she can stand." Thus, Ms. Caldwell was experiencing significant pain well before any falls occurred, and Dr. Schurman acknowledged that the fracture may not be detected until long after the collision.

Dr. Schurman's July 22, 2003 records state "Follow up left hip pain status post revision, 3/03, and MVA 6/03." There is NO mention whatsoever of any falls, let alone any falls serious enough to fracture Ms. Caldwell's femur. Three days later, on July 25, Ms. Caldwell was seen again at Alameda Hospital, and those records state "she has had pain since the accident. Patient has had increased pain and has been unable to walk since this afternoon. NO NEW INJURY." (Emphasis added)

Just days later, on August 2, 2003, Ms. Caldwell went to the Emergency Room at Alta Bates. Those records state "she has a history of left total hip replacement revision in March of 2003 and was reinjured after a motor vehicle accident in early June of this year and has had subsequent left hip pain. During the last week she has had difficulty standing on it with increased swelling in the lateral thigh area over the last two weeks. She states that she has fallen on a couple of occasions due to pain and her leg giving out." It is vital to note that there is absolutely no mention whatsoever of Ms. Caldwell injuring her left leg or hip (or any part of her body) in any of these falls.

Dr. Schurman does not mention anything about any falls until after the August 4, 2003 surgery to repair the femur fracture. In his Discharge Summary of August 10, 2003, he states "She has a history of being in a MVA in June 2003, struck on the left side. ... She has also has a number of mechanical falls, which *may* have resulted in the paraprosthetic femur fracture." (Emphasis added) Thus, this is mere speculation by Dr. Schurman, and it contradicts all the other evidence in the case, including the Alta Bates and Alameda Emergency Room records from just days before.

All the records are clear that Ms. Caldwell was experiencing significant left leg and hip pain from the day of the collision until the date of her femur surgery, and that this pain *gradually* increased over time. This is consistent with the fracture having been sustained in the collision and gradually worsening, and is inconsistent with any theory that a subsequent fall traumatically caused her femur fracture. Furthermore, it is far more likely that a 4,000 pound SUV crushing Ms. Caldwell's car door directly into the left side of her body caused her fracture, as opposed to some alleged fall that is not even specifically described or reported in any detail whatsoever in any of her medical records. There is no indication in any of Ms. Caldwell's medical records of any time, date, place or other details of any fall. Ms. Caldwell testified at her deposition in the underlying case that she did not injure her leg in any fall, and the USAA defense attorney and adjuster in the third party case obviously believed her, as they paid the $100,000 policy limits after a long and thorough investigation, including any alleged falls.

Thus, all of the evidence indicates that Dr. Schurman simply misunderstood Ms. Caldwell or the Alta Bates ER records and mistakenly concluded that Ms. Caldwell fractured her femur in

Raymond Umamoto
April 13, 2004
Page 3

a fall. Even if USAA could *somehow* prove that Ms. Caldwell fractured her femur in a fall (and we strongly believe that they *cannot* prove this), since pain and weakness from the collision was causing her leg to give out, the collision would <u>still</u> be deemed a substantial factor under CACI No. 430 in causing the fractured femur and surgery.

Thus, under every possible scenario, the collision is a substantial factor in causing Ms. Caldwell's fracture and surgery. Whatever your investigation reveals, USAA is going to be liable for Ms. Caldwell's damages, so there is no reasonable basis for further delaying settlement of this claim. Since this is a first party claim, the duty of good faith and fair dealing requires that USAA treat Ms. Caldwell's interests *at least* equal to their own, and to promptly attempt to settle her claim. I had a UM claim with State Farm many years ago in which I had to fight them for over a year (after rejecting their $50,000 settlement offer) before they finally paid the $100,000 policy limits. I associated Bill Shernoff's law firm into the subsequent bad faith case against State Farm, which we settled for $175,000. USAA can throw good money after bad by continuing to delay (or by denying) this claim, or they can cut their losses and limit their extra-contractual exposure by settling this claim for the policy limits.

We once again respectfully request that USAA promptly pay the $300,000 UIM policy limits, minus whatever set-offs or reductions USAA is entitled to under Ms. Caldwell's policy.

Thank you very much for your anticipated courtesy and cooperation in this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

*Joseph Tomasik*

Joseph E. Tomasik

JET/lc

# HP LaserJet  *3200se*



HP LASERJET 3200

APR-13-2004   6:42PM

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 606 | 4/13/2004 | 6:40:04PM | Send | 18885318722 | 2:12 | 4 | OK |

---

Law Offices of Joseph E. Tomasik

The Studio Building
1819 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone (510) 848-0500
Facsimile (510) 848-0537
Website: www.lawjt.com

### FACSIMILE TRANSMITTAL MEMO

| | |
|---|---|
| Date: | April 13, 2004 |
| To: | Ray Umamoto<br>Casualty Claims Examiner<br>USAA |
| Fax: | 888/531-8722        Tel: 800/531-8222 ext. 46796 |
| From: | Joseph E. Tomasik |
| Re: | Carey Caldwell<br>Claim (policy) No.: 13311516-7101-5-8234 |
| Pages: | 4 including this cover sheet |

If you do not receive the total number of pages indicated above, or if there is a problem with the transmission, please contact the sender at (510) 848-0500.

HARD COPY: ■ Will follow  ☐ Will not follow

*CONFIDENTIALITY NOTICE*
THE INFORMATION CONTAINED IN THIS FACSIMILE MAY BE CONFIDENTIAL, PROPRIETARY, AND/OR LEGALLY PRIVILEGED INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, HE/SHE IS HEREBY NOTIFIED THAT ANY COPYING, DISSEMINATION OR DISTRIBUTION OF CONFIDENTIAL, PROPRIETARY OR PRIVILEGED INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER.

*Board of Governors-Alameda/Contra Costa Trial Lawyers Assoc., Consumer Attorneys of California: ATLA*

# EXHIBIT 8



**USAA**®

USAA CASUALTY INSURANCE COMPANY
9800 Fredericksburg Road, San Antonio, TX 78288


JOSEPH E TOMASIK, ATTNY
THE STUDIO BLDG
2039 SHATTUCK AVE STE 400
BERKELEY CA 94704-0000


April 16, 2004

Policyholder:  Carey T. Caldwell
Reference Number:  13311516-7101-5-8244
Date Of Loss:  June 6, 2003
Loss Location:  Oakland, California
Your Client: Carey Caldwell

Dear Mr. Tomasik:

We have received your correspondence dated April 13, 2004.

We are unable to accept or reject your demand for policy limits
at this time.

This letter is to further confirm that there is no dispute that
there is Underinsured Motorist and Medical Payments Coverages
available for this loss. We need to further understand what
injury and damages your client sustained from this accident.

I also understand that you still want to try and resolve this
matter without formal arbitration. If this is not the case please
advise me for immediate transfer for formal arbitration.

This claim has not been concluded because we will need to get all
pre-post accident medical records and films for your client. We
will need to proceed with a formal records review to further
understand what injury was caused or aggravated by this accident.
I have ordered all left hip films from Dr. Schurman, Stanford
Hospital (Palo Alto) Stanford University Medical Center(San
Franciso), Alta Bates Medical Center (Oakland) Dr. Mitra. If
there are any providers I may have missed please inform me as
soon as possible.

When the above has been received, your claim will be given prompt
attention.


13311516 - 5 - CA - 06/06/03 - 8244 - 27 - P126

JOSEPH E TOMASIK, ATTNY            April 16, 2004            Page 2


If you wish to discuss this matter, please contact me.

Sincerely,

Ray Umamoto
Casualty Claims Examiner
USAA Western Regional Office
Phone:  800-531-8222, Extension 46796
Fax Phone:  888-531-8722

**EXHIBIT 9**

# Law Offices of Joseph E. Tomasik

The Studio Building
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: (510) 848-0500
Facsimile: (510) 848-0537
Website: www.lawjt.com

April 22, 2004

_Via Facsimile (888/531-8722) & U.S. Mail_

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

Re:    Claim (policy) No.:    13311516-7101-5-8234
       Your Insured:         Carey Caldwell
       Date of Loss:         June 6, 2003
       Claimant:             Carey Caldwell

Dear Mr. Umamoto:

I am writing as a follow-up to our telephone conversation of April 19, 2004. You stated that you ordered the X-ray films a few days before, and that once you receive those films, USAA was going to have a doctor perform a formal records review. First, I want to repeat my surprise and disappointment that USAA first ordered the X-ray films just a few days ago, especially since we made our settlement demand over two months ago, and you had a Medical Authorization signed by Ms. Caldwell last year. We do not believe that this delay complies with the duty to conduct a prompt evaluation of the claim as required by the duty of good faith and fair dealing which exists in first party claims such as this. In addition, if USAA does proceed with a formal records review, we believe that the duty of good faith and fair dealing requires that it select a fair and impartial doctor to perform that review, as opposed to one of the biased "hired guns" that some insurance carriers use in third party cases.

Second, you did not offer any persuasive rationale as to why USAA should not pay the policy limits (minus any set-offs allowed under the policy) immediately. You stated that a medical record mentioned that Ms. Caldwell had some hip weakness three days before the collision due to her April, 2003 hip replacement revision surgery, and that this weakness might require some apportionment of Ms. Caldwell's damages. You did not recall the name of the medical provider associated with that record, but you agreed to provide me with a copy of the record as soon as you could locate it. I am aware of a medical notes from May 29, 2003, eight days before the collision, that state that Ms. Caldwell's hip was weak. Nonetheless, as we discussed, even if CSAA could prove that this weakness contributed to one of these falls caused the femur fracture, the collision is a substantial factor in causing the femur fracture, and the facts of this claim do not justify any apportionment.

Although Ms. Caldwell's hip was not completely back to full strength at the time of the collision, the records as a whole indicate that she was making an excellent recovery, and there is no indication that her leg was giving out on her before the collision. The medical records are also clear that her condition worsened significantly as a result of the collision, and the records consistently mention the collision (and not the hip replacement revision) as the cause of her weakness. As we also discussed, I am still awaiting USAA's evidence supporting USAA's

Raymond Umamoto
April 22, 2004
Page 2

contention that the femur fracture was caused by a fall. The only "evidence" of which I am aware is a few brief references by Dr. Schurman several months after the collision, and all of the other medical records indicate that this is merely a misunderstanding by Dr. Schurman.

Even if USAA could somehow come up with specific evidence regarding details of a fall that proved a fall actually caused the femur fracture, this would still be a policy limits claim. Not only was Ms. Caldwell well on her way to recovery at the time of the collision, but her issues at that time involved her <u>hip</u>. Since this UIM claim is for the fracture to her <u>femur</u>, California law would <u>not</u> provide for apportionment of damages in this claim, since Ms. Caldwell's pre-existing hip weakness was not caused by an independent tortfeasor. If the collision was one of the factors in causing Ms. Caldwell to fall, even if the fall was the sole cause of her femur fracture and surgery, Ms. Caldwell would still be entitled to recover all of her damages from USAA under her UIM claim. These issues are all academic anyway, because USAA has no persuasive detailed evidence that a fall caused the femur fracture.

You state in your April 16, 2004 letter that "this claim has not been concluded because we will need to get all pre-post accident medical records and films." First, you told me on the telephone that you already have all of her pre-collision medical records. Second, it is clear from the medical records that her pre-collision problems dealt with her <u>hip</u>, and thus as discussed above, those records are only relevant regarding whether it contributed to her falls, which as discussed above is legally irrelevant. While USAA is entitled to perform a *prompt* investigation, there is nothing in the X-rays that would make this claim worth less than the policy limits. Since the X-ray reports do not reflect a femur fracture until August, 2003, reviewing the X-ray films can only make Ms. Caldwell's claim stronger, and it already is a policy limits claim. Since this is a policy limits claim whether the fracture was caused by the collision or by one of her falls, delaying settlement until the X-rays are reviewed is only unnecessarily delaying resolution of the claim.

USAA has had more than sufficient time to investigate this claim, and whatever further investigation reveals, this is still a policy limits claim. If we are forced to proceed to arbitration, the likelihood of USAA obtaining an award below the policy limits is very low, and it certainly does not appear to be worth the risk of incurring huge extra-contractual liability. Every attorney with whom I have discussed this claim cannot believe that USAA has not tendered the policy limits. If USAA wants to risk a very large bad faith case for a slim chance at very little savings, that is its decision. Since USAA is in violation of Insurance Regulation §2695.7 (b), Ms. Caldwell is requesting that USAA expedite its evaluation of her claim and **provide her with a decision on her policy limits demand by May 3, 2004**. If USAA does not tender the policy limits by that time, we are entitled to a written explanation of the law, facts, and policy provisions supporting such a decision. In addition, please let me know what set-offs USAA is alleging in this claim. Thank you for your attention to this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

*Joseph Tomasik*

Joseph E. Tomasik

JET/lc

# EXHIBIT 10

# Law Offices of Joseph E. Tomasik

The Studio Building
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: (510) 848-0500
Facsimile: (510) 848-0537
Website: www.lawjt.com

April 26, 2004

*Via Facsimile (888/531-8722) & U.S. Mail*

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

|       | Re:                    |                          |
| ----- | ---------------------- | ------------------------ |
|       | Claim (policy) No.:    | 13311516-7101-5-8234     |
|       | Your Insured:          | Carey Caldwell           |
|       | Date of Loss:          | June 6, 2003             |
|       | Claimant:              | Carey Caldwell           |

Dear Mr. Umamoto:

    I have had Ms. Caldwell's X-rays reviewed by a consulting expert radiologist. He stated that in viewing the Alameda Hospital Emergency Room X-rays from the date of the collision, Ms. Caldwell also suffered a **displaced left hip fracture** (which was *apparently missed until now*) as a result of the collision. While he did not see the femur fracture until the Alta Bates X-rays of August 2, 2003, he stated that the femur fracture could have been present but not detected by X-rays, or the femur could have been weakened by the collision so that the fracture developed over time. What is crucial to note is that since the collision was violent enough to fracture Ms. Caldwell's pelvis, the collision probably directly fractured the femur, or weakened the femur sufficiently so that the fracture developed with continued activity by Ms. Caldwell.

    Even if USAA somehow could prove that the femur fracture was sustained in a fall, it is clear from all of the medical records that you already possess that the collision was a substantial factor (and probably the dominant factor) in Ms. Caldwell's pain and weakness that caused her leg to give out. California law does not provide for apportionment in this claim, since there is no involvement of any independent tortfeasor other than the underinsured motorist, Gwendolyn Harrison. Thus, this is clearly a policy limits case no matter what any further investigation reveals, and we hereby again respectfully request that USAA tender the policy limits (minus any set-offs – please let me know what USAA is claiming) as soon as possible, and no later than May 3, 2004. Thank you very much for your anticipated courtesy and cooperation in this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

*Joseph Tomasik*

Joseph E. Tomasik

JET/lc

# EXHIBIT 11



**USAA CASUALTY INSURANCE COMPANY**
9800 Fredericksburg Road, San Antonio, TX 78288

JOSEPH E TOMASIK, ATTNY
THE STUDIO BLDG
2039 SHATTUCK AVE STE 400
BERKELEY CA 94704-0000

April 28, 2004

Policyholder: Carey T. Caldwell
Reference Number: 13311516-7101-5-8244
Date Of Loss: June 6, 2003
Loss Location: Oakland, California
re: Carey Caldwell

Dear Mr. Tomasik:

This letter is in response to your letter dated April 26, 2004.
We are unable to accept or reject your demand for the
Underinsured Motorist policy limits at this time.

We are in agreement that we have a causation issue that needs to
be addressed. You indicated you had your own expert review the
X-rays of your client, we are open to seeing a copy of their
report. Please send me a copy as soon as possible. As you know we
are entitled to investigate the issues and come to our own
conclusion.

I disagree with your comment that apportionment is not an issue,
it is my understanding that causation is also a component to that
argument.

As stated earlier, we will continue the course of getting all the
films and records for a formal records review.

I understand that your client is not making a Medical Payments
Coverage claim at this time. This file reflect she has $49,775.00
still available to her for this loss.

I also understand that your client does not wish to proceed with
formal arbitration at this time. If this is not the case please
advise me in writing for immediate referral.

If you believe this claim has been wrongfully declined or
rejected, in whole or in part, or that there is a dispute as to
liability or damages, you have the right to have the matter
reviewed by the California Department of Insurance. The address
and telephone number are:

13311516 - 5 - CA - 06/06/03 - 8244 - 27 - C200

JOSEPH E TOMASIK, ATTNY          April 28, 2004          Page 2

California Department of Insurance
Claims Services Bureau, 11th Floor
300 South Spring Street
Los Angeles, CA 90013
(213) 897-8921 or (800) 927-4357

Sincerely,

Ray Umamoto
Casualty Claims Examiner
USAA Western Regional Office
Phone: 800-531-8222, Extension 46796
Fax Phone: 888-531-8722

13311516 - 5 - CA - 06/06/03 - 8244 - 27 - C200

# EXHIBIT 12

# Law Offices of Joseph E. Tomasik

| | |
|---|---|
| The Studio Building | Telephone: (510) 848-0500 |
| 2039 Shattuck Ave., Suite 400 | Facsimile: (510) 848-0537 |
| Berkeley, California 94704 | Website: www.lawjt.com |

May 4, 2004

*Via Facsimile (888/531-8722) & U.S. Mail*

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

|  Re: | Claim (policy) No.: | 13311516-7101-5-8234 |
|---|---|---|
| | Your Insured: | Carey Caldwell |
| | Date of Loss: | June 6, 2003 |
| | Claimant: | Carey Caldwell |

Dear Mr. Umamoto:

Thank you for your later of April 28, 2004 regarding the above-referenced claim. In my last two letters, I requested that you inform me as to what set-offs or reductions from the policy limits (such as for the previous settlement or for Med-Pay payments) that USAA is claiming under Ms. Caldwell's UIM coverage. I once again request that you provide me (in writing) with the amounts of any and all set-offs or reductions that USAA is asserting, and that you identify all the policy provisions that support such set-offs or reductions, as soon as possible.

You also state in your letter "we are in agreement that we have a causation issue that needs to be addressed." I do <u>not</u> agree that causation still needs to be addressed in this claim, since I feel that I have thoroughly addressed that issue regarding Ms. Caldwell's claim, and that I have answered it in the affirmative. It is clear that the medical records indicate that Ms. Caldwell's falls were caused by her leg giving out due to <u>pain and weakness resulting from the collision</u>. We provided those records to you nearly three months ago, and the relevant records can easily be reviewed in a matter of minutes. Whether the femur fracture was sustained in the collision or from one of the falls, either way the collision was a substantial factor in causing the femur fracture.

I have repeatedly requested a factual and legal explanation as to how USAA's further investigation will have any relevance to the value of Ms. Caldwell's claim, but you still have yet to provide that information to me. You stated in your letter that "I disagree with your comment that apportionment is not an issue. It is my understanding that causation is also a component to that argument." Please provide me with the legal and factual bases for this position.

In regard to my consulting expert radiologist's finding that Ms. Caldwell sustained a left hip fracture in the collision, that expert has only provided me with his verbal opinion. I do not see why Ms. Caldwell should have to pay out of her own pocket to have a written expert report created to provide to USAA, given that USAA is having their own record review, and since this is clearly a policy limits claim anyway. The important point here is that <u>within two weeks</u> my

Raymond Umamoto
May 4, 2004
Page 2

office was able to request and obtain copies of all of Ms. Caldwell's X-rays as well as an opinion from an expert radiologist, but USAA has not been able to do the same within <u>three months</u>, even though they owe a duty of good faith and fair dealing to perform a *prompt* investigation. This was a policy limits claim before, and the finding by our consulting radiologist just makes this even more clear. We once again respectfully request that USAA tender the policy limits (minus whatever set-offs or reductions they are asserting), or at the very least expedite their evaluation and response to our demand.

Thank you very much for your anticipated courtesy and cooperation in this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

Joseph E. Tomasik

JET/lc

# EXHIBIT 13

# Law Offices of Joseph E. Tomasik

The Studio Building
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: (510) 848-0500
Facsimile: (510) 848-0537
Website: www.lawjt.com

May 12, 2004

_Via Facsimile (888/531-8722) & U.S. Mail_

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

| | | |
|---|---|---|
| Re: | Claim (policy) No.: | 13311516-7101-5-8234 |
| | Your Insured: | Carey Caldwell |
| | Date of Loss: | June 6, 2003 |
| | Claimant: | Carey Caldwell |

Dear Mr. Umamoto:

This is my _third_ letter to you requesting that you provide me with the amounts of any **set-offs or reductions** from the policy limits (such as for the previous settlement or for Med-Pay payments) that USAA is claiming under Ms. Caldwell's UIM coverage. I once again request that you provide me (in writing) with the amounts of any and all set-offs or reductions that USAA is asserting, and that you identify all the policy provisions that support such set-offs or reductions, as soon as possible. Please also provide me with an update on the status of your investigation.

Thank you very much for your anticipated courtesy and cooperation in this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

Joseph E. Tomasik

JET/lc

_Board of Governors Alameda/Contra Costa Trial Lawyers Assoc.: Consumer Attorneys of California: ATLA_

# EXHIBIT 14



USAA CASUALTY INSURANCE COMPANY
9800 Fredericksburg Road, San Antonio, TX 78288

JOSEPH E TOMASIK, ATTNY
THE STUDIO BLDG
2039 SHATTUCK AVE STE 400
BERKELEY CA 94704-0000

May 18, 2004

Policyholder: Carey T. Caldwell
Reference Number: 13311516-7101-5-8244
Date Of Loss: June 6, 2003
Loss Location: Oakland, California
re: Carey Caldwell

Dear Mr. Tomasik:

This letter is in response to your letter dated May 12, 2004.

Please review Part C under our insured automobile policy in
answer to your question posed in this letter. Under the heading
of NON-DUPLICATION on page 13 and on page 14 item "4. Paid under
another provision or coverage in this policy. And on page 19 of
21"OUR RIGHT TO RECOVER PAYMENT B. If we make a payment under
this policy and the person to or for whom payment was made
recovers damages from another, that person shall hold in trust
for us the proceeds of the recovery and reimburse us to the
extent of our payment."

Please also note"Our rights under paragraphs A and B. above arise
only after the covered person has been fully compensated for
those damages." This is also on page 19.

Since we have a dispute in damages, it is not clear at this time
if your client has been fully compensated. To date USAA has paid
$225.00 under your client's Medical Payments coverage. I
understand that your client's medical bills were paid by her
health insurance and she is not making any further Medical
Payments Coverage claim at this time. If this is not the case,
please let me know so that I can advise the Medical Payments
adjuster handling that part of her claim.

Please let me know if your client did not provide you with a copy

13311516 - 5 - CA - 06/06/03 - 8244 - 27 - C200

USAA

of her automobile policy. If not, and you would like a copy,
please let me know.

Sincerely,

Ray Umamoto
Casualty Claims Examiner
USAA Western Regional Office
Phone:  800-531-8222, Extension 46796
Fax Phone:  888-531-8722

# EXHIBIT 15

# Law Offices of Joseph E. Tomasik

**The Studio Building**
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: (510) 848-0500
Facsimile: (510) 848-0537
Website: www.lawjt.com

May 20, 2004

_Via Facsimile (888/531-8722) & U.S. Mail_

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

<table>
<tr><td>Re:</td><td>Claim (policy) No.:</td><td>13311516-7101-5-8234</td></tr>
<tr><td></td><td>Your Insured:</td><td>Carey Caldwell</td></tr>
<tr><td></td><td>Date of Loss:</td><td>June 6, 2003</td></tr>
<tr><td></td><td>Claimant:</td><td>Carey Caldwell</td></tr>
</table>

Dear Mr. Umamoto:

Thank you for your letters of May 18, 2004 regarding my request for information regarding the set-offs that USAA is asserting in this claim. In my last letter I also requested that you please provide me with an update on the status of your investigation, but I have not received such an update. This is a first party claim and it has been over three months since I submitted our settlement package, and Ms. Caldwell is entitled to know information about her claim. Please let me know if you have finally obtained the X-ray films (which me took two weeks to obtain), whether a doctor is reviewing those films, the identity of the doctor, and an estimate as to when Ms. Caldwell can expect a response to her settlement offer. Please also provide me with a copy of the policy which Ms. Caldwell had in effect at the time of the subject collision.

Thank you very much for your anticipated courtesy and cooperation in this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

_Joseph Tomasik_

Joseph E. Tomasik

JET/lc

# EXHIBIT 16



USAA CASUALTY INSURANCE COMPANY
9800 Fredericksburg Road, San Antonio, TX 78288


JOSEPH E TOMASIK, ATTNY
THE STUDIO BLDG
2039 SHATTUCK AVE STE 400
BERKELEY CA 94704-0000


May 20, 2004

Policyholder:  Carey T. Caldwell
Reference Number:  13311516-7101-5-8244
Date Of Loss:  June 6, 2003
Loss Location:  Oakland, California
re: Carey Caldwel

Dear Mr. Tomasik:

This letter is in response to your letter dated May 4, 2004.

We are unable to accept or reject your demand for Underinsured
Motorist limits at this time.

I have recently provided you with the policy provisions that
speaks on set-offs or non duplication of payment.

We are finalizing the gathering of the medical records and films
for our formal records review. If you have your client's pre and
post accident films, please forward them to USAA as soon as
possible.  Unfortunately, your verbal hearsay input from your
consulting radiologist does not help anyone. If you have any
additional medical records or reports you would like to supply
for our formal records review please forward them to me.

There is no need to discuss factual, legal, causation, and
apportionment issues at this time.

We disagree with your opinion that this is a clear policy limits
claim without further investigation.

I also understand that we are still working this claim without
formal arbitration. If this is not the case, please let me know.

We will respond to your demand once the formal records review is
completed.


If you believe this claim has been wrongfully declined or
rejected, in whole or in part, or that there is a dispute as to
liability or damages, you have the right to have the matter
reviewed by the California Department of Insurance.  The address

13311516 - 5 - CA - 06/06/03 - 8244 - 27 - C200

JOSEPH E TOMASIK, ATTNY          May 20, 2004          Page 2

and telephone number are:

    California Department of Insurance
    Claims Services Bureau, 11th Floor
    300 South Spring Street
    Los Angeles, CA 90013
    (213) 897-8921 or (800) 927-4357

Sincerely,

Ray Umamoto
Casualty Claims Examiner
USAA Western Regional Office
Phone:  800-531-8222, Extension 46796
Fax Phone:  888-531-8722

# EXHIBIT 17

# Law Offices of Joseph E. Tomasik

**The Studio Building**
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: **(510) 848-0500**
Facsimile: **(510) 848-0537**
Website: www.lawjt.com

June 4, 2004

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

Re:   Claim (policy) No.:   13311516-7101-5-8234
      Your Insured:         Carey Caldwell
      Date of Loss:         June 6, 2003
      Claimant:             Carey Caldwell

Dear Mr. Umamoto:

In my May 20, 2004 letter to you, I requested that you let me know whether a doctor is now reviewing Ms. Caldwell's radiological films, the identity of the doctor, and when Ms. Caldwell can expect a response to her settlement offer. I also requested that you provide me with a copy of the **insurance policy** which Ms. Caldwell had in effect at the time of the subject collision. I have not received a response, and would greatly appreciate if you would provide that to me. In your May 20, 2004 letter to me, you state **"your verbal hearsay input from your consulting radiologist does not help anyone."** USAA is Ms. Caldwell's own insurance company, and the duty of good faith and fair dealing requires that we work together in a prompt manner to compensate Ms. Caldwell fairly for her damages. We provided you with an expert opinion free of charge, and merely because we did not also pay for a written report does not make the new discovery of the hip fracture irrelevant. I would hope and expect that you pass this information on to your consulting medical expert to assist in a proper evaluation of the X-rays. I also hope and expect that we can keep our communications on a professional level.

Based on your representations of the offsets which USAA is claiming, I have enclosed Ms. Caldwell's CCP § 998 Offer to Compromise. I presume that you will be in a position to respond to this settlement offer by the time the offer expires, if not sooner. If this case does proceed to arbitration, given that her economic damages alone exceed $170,000, Ms. Caldwell is very confident that she will receive an award in excess of the policy limits, and then USAA would be dealing with extracontractual damages. Nonetheless, Ms. Caldwell is certainly willing to consider offers below $199,744.99 if USAA has persuasive evidence why she should do so. If you have any questions or comments, please do not hesitate to contact me. Thank you very much for your anticipated courtesy and cooperation in this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

Joseph E. Tomasik

JET/vt

*Board of Governors-Alameda/Contra Costa Trial Lawyers Assoc.; Consumer Attorneys of California; ATLA*

# EXHIBIT 18

# Law Offices of Joseph E. Tomasik

The Studio Building
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: (510) 848-0500
Facsimile: (510) 848-0537
Website: www.lawjt.com

June 21, 2004

*Via facsimile & U.S. Mail:* (888/531-8722)

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

>Re:    Claim (policy) No.:    13311516-7101-5-8234
>Your Insured:    Carey Caldwell
>Date of Loss:    June 6, 2003
>Claimant:    Carey Caldwell

Dear Mr. Umamoto:

    I have not received a response from you regarding my May 20, 2004 and June 4, 2004 letters, nor have I received a copy of the USAA insurance policy that Ms. Caldwell had in effect at the time of the collision. Please provide those to me at your earliest convenience. Thank you very much for your anticipated courtesy and cooperation in this matter.

Very truly yours,

LAW OFFICES OF JOSEPH E. TOMASIK

Joseph E. Tomasik

JET/vt

# EXHIBIT 19



**USAA** ®

## UNITED SERVICES AUTOMOBILE ASSOCIATION
P. O. Box 659462 San Antonio, TX  78265-9035

Law Offices of Joseph E. Tomasik
2039 Shattuck Ave., ste 400
Berkeley, CA 94704

July 1, 2004

Policyholder: Carey Caldwell
Reference Number: 1331-15-16
Date of Loss: June 6, 2003
Loss Location: Oakland, CA

RE: Carey Caldwell

Dear Mr. Tomasik

This letter is in response to your letters dated May 20, 2004 and June 4, 2004.

Enclosed is a copy of your client's automobile policy at the time of this loss per your request.

If you are able to get medical records quicker than we can, I would think it would be in your client's best interest to forward them to me. If you have any of your client's x-rays or MRI's in your possession please forward them to USAA immediately so that we may pass them on to our formal records reviewer. We have received some films from Stanford Healthcare Radiology to date

You have requested the name of the doctor who is conducting the formal records review, since it is considered work product, I am not at liberty to disclose this information to you.

You have stated to me that you have verbal input from a consulting radiologist that supports your client's injury was caused or aggravated by this accident. I am sorry that your verbal input is not something I can pass on to the records review doctor. However, if your consulting radiologist is willing to commit his opinion to paper, I would be more than happy to pass his opinion on to the records review doctor. Surely, you cannot expect me to pass on your hearsay input.

I am a little confused on your filing of a 998 on this matter. It is my understanding from our previous contacts that we are working on this claim without the formal arbitration process. If this is the case the filing of a 998 is not an appropriate action. Please put it clearly in writing whether or not your client wants her claim engaged in formal arbitration. If she wants formal arbitration I will transfer this file to our litigation unit and counsel.

Without the formal records review we do not know if your client's injuries were caused or aggravated by this accident. Without that input, we do not know whether or not she has already received reasonable compensation. So your request when she can expect an offer is a little premature.

**Please** send us a full accounting on what Blue Cross and any other health insurance paid toward **your** client's medical bills. As you know we are able to consider incurred versus billed medical bills **for** this loss.

Thank you for your anticipated cooperation and patience in this matter.

Sincerely,

Ray Umamoto
Claims Examiner
USAA Western Regional Office
Phone:(800)531-8222   Ext. 46796 Facsimile: (916) 285-2939

# EXHIBIT 20

# Law Offices of Joseph E. Tomasik

The Studio Building
2039 Shattuck Ave., Suite 400
Berkeley, California 94704

Telephone: (510) 848-0500
Facsimile: (510) 848-0537
Website: www.lawjt.com

July 9, 2004

_Via facsimile & U.S. Mail:_ (888/531-8722)

Raymond Umamoto
USAA Claims
P.O. Box 15506
Sacramento, CA 95852

| | | |
|---|---|---|
| Re: | Claim (policy) No.: | 13311516-7101-5-8234 |
| | Your Insured: | Carey Caldwell |
| | Date of Loss: | June 6, 2003 |
| | Claimant: | Carey Caldwell |

Dear Mr. Umamoto:

Thank you for your letter of July 1, 2004 forwarding a copy of Ms. Caldwell's USAA policy in effect at the time of the subject collision. With all due respect, I have to tell you that the delays in the handling of this first party claim are downright shocking. It took my office about two weeks to obtain all of Ms. Caldwell's X-ray films, send them to our consulting radiologist and then obtain an opinion from him. In my May 4, 2004 letter to you, I requested that USAA expedite the evaluation of this claim, but it appears that you have done nothing to expedite obtaining the X-ray films. It has now been **nearly five months** since I sent you our settlement package, and you _still_ have not even obtained all of Ms. Caldwell's X-ray films.

If this case does not settle for the remaining policy limits and we are forced to proceed to arbitration, I am sure that your defense counsel will be as distraught as Ms. Caldwell is about this unconscionable delay, not to mention the delay in responding to my correspondence and the delay in providing us with a copy of the policy. We are getting the impression that you have no intention of ever making a reasonable settlement offer in this case, and that you are merely stalling as long as possible before turning the claim over to defense counsel for even further delay. I am hereby formally requesting that you provide your supervisor with a copy of this letter which I have enclosed.

Defense counsel should also be seriously disturbed about your refusal to provide our consultant radiologist's verbal opinion to the doctor who you are having perform a records review. Your objection that this is "hearsay" may be relevant at an arbitration hearing, but it is completely inappropriate for what should be considered by your records reviewer, especially since the pelvis fracture apparently was missed by Ms. Calwell's treating doctors. Virtually everything that any adjuster or records reviewer ever considers is hearsay, whether it is written or verbal. Thus, I surely do expect you to tell your records reviewer that our radiologist detected a fracture on the left side of Ms. Caldwell's pelvis (obturator ring), which is the same side where the SUV smashed Ms. Caldwell's drivers side door into the left side of her body.